14

Argued and submitted August 30, 1991, reversed and remanded for new trial December 9, 1992

## STATE OF OREGON,
*Respondent,*

*v.*

## DANIEL DEAN WESTBY,
*Appellant.*

## (89-07-32767; CA A63580)

843 P2d 973

Steven V. Humber, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

BUTTLER, P. J.

Rossman, J., dissenting.

## BUTTLER, P. J.

Defendant seeks reversal of his convictions for murder, ORS 163.115(1)(a), unauthorized use of a motor vehicle, ORS 164.135(1)(a), theft in the first degree, ORS 164.055 (1)(d), and theft in the third degree, ORS 164.043.

Defendant and the victim, Anderson, met while the two were incarcerated in the Umatilla County Jail. After they were released, defendant lived with Anderson at his residence in Elgin, Oregon. During the time he lived with Anderson, defendant was unemployed. Anderson was known "always" to carry large sums of cash in a "trucker's wallet" that he carried chained to his belt. There was evidence that Anderson and his pickup disappeared from Elgin in late October, 1988, when he was last seen alive with defendant, with whom he had been drinking heavily. The two had started to quarrel. Police found Anderson's partially decomposed body in January, 1989, on a waterbed in his Elgin residence. He had been shot in the head. When his body was discovered, he had been dead approximately three months. There was no sign of forced entry. His pickup and wallet were missing. No murder weapon was found. Defendant's fingerprints were found in the house.

In late October, 1988, defendant arrived in Leadville, Colorado, to stay with his half-brother, Newman. He told Newman that he had hitchhiked there and had left some of his belongings on a dirt road. Together, they went to that location to pick them up. Newman did not see a pickup truck parked there. Soon thereafter, the area was covered with four to five feet of snow. The following spring, Anderson's pickup truck was found near the area where defendant and Newman had gone to retrieve defendant's belongings. Defendant's papers were also found in or around the truck.

When defendant left the Umatilla County Jail, he had about $80. When he arrived in Leadville, he had several hundred dollars. He told Newman that he had been working in a stud mill in Oregon. After defendant consented to a search of his property, nothing belonging to Anderson was found among his belongings. There was evidence that Anderson's truck had been seen in Elgin after defendant arrived in Colorado. Defendant told police that Anderson was alive

when defendant left Elgin and that Anderson had given him $50.

Over defendant's objection, and after applying the balancing test in *State v. Johns*, 301 Or 535, 725 P2d 312 (1986), the court granted the state's pretrial motion to allow evidence of four prior uncharged[1] acts of defendant's misconduct for the purpose of showing defendant's motive and identity, based on a pattern, scheme or plan that defendant had used to steal from people. Pursuant to that ruling, this evidence was admitted:

(1) In October, 1978, defendant, who was then living in Washington, took his roommate's 1976 Camaro and did not return it until three days later, when he surrendered himself to Oregon police. He was convicted of unauthorized use of a motor vehicle.

(2) In August, 1987, defendant admitted to burglarizing the Oregon home of his then brother-in-law in July, 1987, taking approximately $5,000 in cash and jewelry and then driving to Washington.

(3) In August, 1987, defendant's brother, James, was house-sitting at the California home of his in-laws. When defendant visited James there, he and James conspired to steal property from the home valued at $4,500. He then left the state.

(4) In September, 1988, defendant and another man went to an auto dealer in Hermiston, took a 1979 Camaro for a test drive, apparently with permission, and were apprehended in The Dalles. Defendant was charged with unauthorized use of a motor vehicle. After the death of Anderson, defendant called the car dealer to offer a civil compromise, which was rejected. He had not yet been tried.

Defendant assigns error to the admission of evidence of each of those uncharged acts.

■ Before we can decide whether the trial court acted within its discretion in admitting the evidence under OEC 404(3), the first issue, which we review as a question of law,

---

[1] As used in this opinion, uncharged acts means acts for which defendant has not been charged in this proceeding.

*see State v. Pratt*, 309 Or 205, 212, 785 P2d 350 (1990), is whether the evidence was relevant to a material, noncharacter issue in the case. *State v. Johnson*, 313 Or 189, 195, 832 P2d 443 (1992).[2] If it is, the issue becomes whether the probative value of the evidence was substantially outweighed by "the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay or needless presentation of cumulative evidence." OEC 403.

■ The state argued in the trial court that the evidence of defendant's unauthorized use of the vehicle taken from the Hermiston car dealer in September, 1988, was admissible to show defendant's motive for committing the crimes with which he was charged.[3] It theorized that defendant stole money and a pickup truck from Anderson, because he wanted to leave Oregon to avoid prosecution on the pending unauthorized use charge and that he killed Anderson to eliminate him as a witness to those thefts. There is evidence to support the state's theory of relevance, and we conclude that the trial court did not err in holding that evidence of that offense was relevant to prove motive and that its probative value was not outweighed by the danger of unfair prejudice.

■ In support of the admissibility of the evidence of the other three prior acts of misconduct, the state argued that it was necessary to its case in view of the circumstantial nature of the evidence against defendant. It offered the evidence "to show [defendant's] pattern to show his—his common plan, his scheme to tie him into this crime." In its memorandum to the court, the state said:

> "The state agrees that none of the * * * crimes [is] particularly unique, but taken together they establish an m/o which is completely consistent with the defendant being the perpetrator of the crimes charged in this case."

---

[2] In *State v. Pinnell, infra*, the court said in a footnote, 311 Or at 109 n 17, that the question of relevance is one that the court must decide under OEC 104(1):

"Preliminary questions concerning * * * the admissibility of evidence shall be determined by the court, subject to the provisions of subsection (2) of this section."

[3] The state does not contend that the evidence is separately relevant to the charges other than murder or that it should be admitted with respect to the other charges, even if excludable with respect to the murder charge.

Although the state concedes that the crimes themselves are not "signature" crimes, *see State v. Pratt, supra*, 309 Or at 210 n 4, it contends that they are relevant to prove identity by the pattern or common thread in each of them and the presently charged crimes: taking of property from acquaintances or from those with whom he is staying and then fleeing the state.

In *State v. Johns, supra*, 301 Or at 551, the court said:

> "Intent or state of mind is often the most difficult element of a crime to prove because many crimes are unwitnessed and even if a witness is present, the witness can only surmise the actor's state of mind. Wright and Graham assert that courts realize the prosecutor's difficulty in proving *mens rea*, or criminal intent, and therefore courts very liberally admit prior crime evidence to prove *mens rea*. 22 Wright & Graham, Federal Practice and Procedure: Evidence § 5239 (1978). *Conversely, this court and other courts have held that evidence of other crimes offered to prove identity is strictly limited to crimes committed 'by the use of a novel means or in a particular manner' so as to earmark the acts as the handiwork of the accused. In other words, to prove identity the prior acts must be a 'signature' crime. See State v. Manrique*, 271 Or [201, 531 P2d 239 (1975)], 208; *State v. Zimmerlee*, 261 Or 49, 53, 492 P2d 705 (1972); McCormick [on Evidence (3d ed 1984)]. Such rigidity is not required when admitting prior acts to prove intent or lack of mistake." 301 Or at 551. (Emphasis supplied.)

Evidence of uncharged misconduct may be admitted to establish identity based on *modus operandi* only if the prosecution has established by a preponderance of the evidence that "(1) there is a *very high degree of similarity* between the prior and charged misconduct and (2) a *distinctive nature of the methodology* of prior and charged misdeeds." *State v. Johnson, supra*, 313 Or at 197. (Emphasis in original.) In *State v. Pinnell*, 311 Or 98, 109, 806 P2d 110 (1991), the court said:

> "Before evidence of other crimes offered to prove identity based on *modus operandi* is admissible, '[m]uch more is demanded than the mere repeated commission of crimes of the same class, such as repeated murders, robberies or rapes.' McCormick, *supra*, at 559-60. The prosecution must establish by a preponderance of the evidence that (1) there is a very high degree of similarity between the charged and

uncharged crimes; and (2) the methodology is attributable to only one criminal, that is, the methodology is distinctive so as to earmark the acts as the handiwork of the accused. * * * Imwinkielreid, [Uncharged Misconduct Evidence] 21, § 3.10 [1984]. *See State v. Johns, [supra,* 301 Or at 551] (evidence of other crimes to prove identity 'is strictly limited to crimes committed "by the use of a novel means or in a particular manner" so as to earmark the acts as the handiwork of the accused. In other words, to prove identity the prior acts must be a "signature" crime'); *State v. Pratt, supra,* 309 Or at 210, n 4 ('[t]o be admissible on the issue of identity [the uncharged] crimes must be nearly identical' or 'sufficiently similar to constitute a "signature crime" '). Whether the two requirements, similarity and distinctiveness or unusual characteristics have been established is a preliminary fact question for the trial court under OEC 104(1).

"In deciding whether the first requirement has been met, *i.e.*, whether there is a very high degree of similarity between the charged and uncharged crimes, three factors are relevant: (1) the time lapse between the two crimes; (2) the geographic distance between the two crimes; and (3) the resemblances between the methodologies of the two crimes. Imwinkielreid, *supra*, at 23-24, § 3.11. The three factors are just that — merely factors in the trial court's discretionary determination of the degree of similarity. *Id.* at 24. '[S]imilarities cannot be considered in a vacuum. The circumstances of each crime as a whole must be compared. * * * [D]issimilarities [also] must be as fully considered as the similarities * * *.' *State v. Pratt, supra,* 309 Or at 214. Determining what constitutes a very high decree of similarity is a matter to be decided on a case-by-case basis. *Id.*

" '[T]he third factor, the resemblances in methodology, is the most important consideration. * * * If both crimes are committed in the same, unique fashion, [that] factor alone is sufficient to support a permissible inference of the identity of the two criminals. The ultimate test is one of logic: Are the similarities in time, place, and methodology sufficient to sustain a rational inference of the identity of the two criminals?' Imwinkielreid, at 24.

"Proof of a very high degree of similarity between the two crimes is insufficient by itself to justify admitting the uncharged crime to prove the accused's identity, however. As Professor Imwinkielreid states: 'Even if the crimes are identical, it just may happen that every safe robber or counterfeiter is familiar with that technique.' *Id.* at 26, § 3.12. Before

evidence of other crimes is admissible to prove identity, the prosecutor must establish the second requirement, *i.e.*, that the methodology is so distinctive that both crimes can be attributed to 'one' criminal. Here again, the prosecutor may attempt to establish the distinctiveness or unusual characteristics of the modus by listing all the points of similarity between the two crimes. As a general proposition, the greater the number of similarities, the stronger are the inferences of identity and distinctiveness. Even a long list of similarities does not necessarily establish an inference of distinctiveness. *Id.* In the final analysis, the issue is the rationality of the inference of distinctiveness rather than the sheer number of similarities. *Id.*" 311 Or at 109-11. (Footnotes omitted.)

The question on appeal is whether the record supports the trial court's findings that the uncharged and charged misconduct are sufficiently similar and distinctive in methodology to support a rational inference of *modus operandi* that is probative of identity. The state concedes that the uncharged acts are not unique, but argues that there are similarities. For example, each involved a theft from someone defendant knew, not from a stranger, and in each case defendant left the state where the crime was committed. Other than that, the three uncharged acts did not involve a similar "methodology" beyond defendant's taking something that did not belong to him. In the 1978 unauthorized use of a motor vehicle in Washington, defendant returned the car within 3 days and surrendered himself to the police. After the July, 1987, burglary, defendant admitted the crime a month later. The August, 1987, theft from his in-laws was committed as part of a conspiracy with his brother. The September, 1988, unauthorized use of the car resulted in his being charged, and he offered a civil compromise. Furthermore, given the state's position that all of the prior bad acts are relevant to the identity of the murderer, the most significant dissimilarity is that none involved violence.

We conclude that there is insufficient evidence to support the trial court's determination that the uncharged acts are sufficiently similar among themselves or to the charged offenses to support a rational inference of distinctiveness probative of identity in the crimes charged. We hold that evidence of 3 of the prior bad acts is not relevant to prove that the person who committed them also committed the charges

against defendant involving theft, unauthorized use of a motor vehicle and murder. Because that evidence is not relevant, it is not necessary to consider whether the evidence should have been excluded under OEC 403. The court erred in admitting that evidence.

The remaining question is whether the error requires reversal. It does not if the error is harmless, *i.e.*, if there is substantial and convincing evidence of guilt and little likelihood that the error in admitting the evidence affected the verdict. *State v. Langley*, 314 Or 247, 839 P2d 692 (1992); *State v. Hansen*, 304 Or 169, 180, 743 P2d 157 (1987). In view of the circumstantial nature of the state's evidence, we cannot say that the error was harmless. The theft and the unauthorized use charges were closely related to the murder charge[4] under the state's theory of the case; the person who committed them also murdered Anderson. The evidence permitted the jury to infer that defendant is a bad person who does bad things and, therefore, that he committed all of the crimes with which he was charged.[5] Although the state has emphasized the need for the evidence, it argues that its admission, if error, was harmless. It is difficult to perceive how it can be both. The error requires reversal and a new trial.[6] Given that conclusion, we need not reach defendant's remaining assignment of error.

Reversed and remanded for a new trial.

**ROSSMAN, J.,** dissenting.

It may very well be that the majority's resolution of the *modus operandi* issue is mandated by the recent pronouncements of our Supreme Court in *State v. Pratt*, 309 Or 205, 785 P2d 350 (1990), and *State v. Pinnell*, 311 Or 98, 806 P2d 110 (1991). However, reversal is not mandated. I am satisfied, after my review of the record, that the admission of evidence

---

[4] For that reason, the trial court denied defendant's motion to sever the charges.

[5] There was no limiting instruction; defendant requested that there not be one.

[6] In *State v. Langley, supra*, the court held that evidence of a murder for which the defendant had been convicted and which bore substantial similarities to the murder with which he was charged should not have been admitted to prove identity. Notwithstanding the otherwise strong case against the defendant, the court held that the error was not harmless.

of the prior acts, even if erroneous, was harmless. The danger that the jury would have found defendant guilty of murder on the basis of previous stealth crimes is minimal, especially given the limited importance placed upon them by the prosecution and the trial court's instructions to the jury. Accordingly, I would affirm the conviction.