On respondent's petition for reconsideration filed March 18, reconsideration allowed; opinion (117 Or App 14, 843 P2d 973 (1992)) clarified and adhered to as clarified November 3, 1993

STATE OF OREGON,
*Respondent,*

*v.*

DANIEL DEAN WESTBY,
*Appellant.*

(89-07-32767; CA A63580)

862 P2d 1318

Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Kaye E. Sunderland, Assistant Attorney General, for petition.

Sally L. Avera, Public Defender, and Steven V. Humber, Deputy Public Defender, *contra.*

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

ROSSMAN, P. J.

## ROSSMAN, P. J.

The state petitions for reconsideration of our opinion, 117 Or App 14, 843 P2d 973 (1992), in which we reversed defendant's convictions on the basis that evidence of prior uncharged acts had been erroneously admitted at trial. We treat the petition as one for reconsideration, ORAP 9.15(1), allow it, clarify our opinion and adhere to it as clarified.

Defendant and the victim, Anderson, met in October, 1988, while incarcerated in the Umatilla County jail. After their release, defendant moved into Anderson's residence in Elgin, Oregon, where the two lived together for a short time. In late October, defendant left Oregon and travelled to Leadville, Colorado, where he began living with his half-brother, Newman. Defendant told Newman that he had hitch-hiked to Colorado and had left some of his belongings on a nearby side road, rather than carry them all the way to Newman's residence. The two went to the location specified by defendant and retrieved the belongings.

Also in late October, 1988, Anderson and his truck disappeared. In January, 1989, Anderson's partially decomposed body was found in his Elgin residence. He had been killed by a bullet in the head and had been dead for approximately three months when his body was discovered. Because the house was locked and its contents were undisturbed and because there was no sign of a forced entry, the police investigated the possibility that the victim had been killed by a houseguest. Anderson's truck and his wallet, in which he was known to carry large amounts of cash, were missing. Police discovered the truck in Colorado, near the place where defendant and Newman had retrieved defendant's belongings. Defendant acknowledged that he had lived with Anderson during October, but maintained that when he left for Colorado, Anderson was still alive. He denied having travelled to Colorado in Anderson's truck.

Before trial, the state moved to admit evidence of ten prior bad acts that had been committed by defendant. The court excluded evidence of six of the proferred incidents and admitted evidence of these:

(1) In October, 1978, defendant stole a car from a roommate in Washington and drove the car to Oregon. He

was subsequently convicted of unauthorized use of a motor vehicle (UUMV).

(2) In July, 1987, defendant stole almost $5,000 in cash from a jewelry box belonging to his brother-in-law, in Oregon, then went to California. He confessed and was allowed to plead to a reduced charge of Burglary II.

(3) In August, 1987, defendant and his brother stole $4,500 worth of jewelry from a house in which his brother was house-sitting in California; defendant then travelled to Oregon. At the time of trial in this case, defendant had not been prosecuted for the California theft.

(4) In September, 1988, defendant took a test drive in an automobile belonging to a Hermiston auto dealer and did not return. He left for Colorado the next month and did not return to Oregon to face the charges against him.

The state argued that the evidence of those four incidents was admissible on several bases, including: (A) to prove defendant's identity by showing his *modus operandi* or "signature," *State v. Bernson*, 93 Or App 115, 120, 760 P2d 1362, *rev den* 307 Or 246 (1988); (B) to show that defendant had a motive to commit the crimes in this case; (C) to show defendant's common plan or scheme; and (D) to establish defendant's state of mind and intent.

Following a jury trial, defendant was convicted of murder, UUMV, theft I and theft III. ORS 163.115(1)(a); ORS 164.135(1)(a); ORS 164.055; ORS 164.043. He appealed, assigning error to, *inter alia*, the admission of the "prior bad acts" evidence.

■ In our opinion, we concluded that the September 1988 offense was admissible because it was relevant to prove defendant's motive and its probative value was not outweighed by the danger of unfair prejudice.[1] However, we

---

[1] The state "theorized that defendant stole money and a pickup truck from Anderson, because he wanted to leave Oregon to avoid prosecution on the pending unauthorized use charge and that he killed Anderson to eliminate him as a witness to those thefts." 117 Or App at 18.

Prior bad acts can be relevant to show that a defendant's recent acts were motivated by a desire to avoid apprehension by the police. *State v. Hampton*, 317 Or 251, 257, 855 P2d 621 (1993).

reversed defendant's convictions on the ground that evidence of the other three offenses was inadmissible, because

> "there is insufficient evidence to support the trial court's determination that the uncharged acts are sufficiently similar among themselves or to the charged offenses to support a rational inference of distinctiveness probative of identity in the crimes charged. We hold that evidence of 3 of the prior bad acts is not relevant to prove that the person who committed them also committed the charges against defendant involving theft, unauthorized use of a motor vehicle and murder." 117 Or App at 21-22.

Because we could not say that the error had been harmless, we reversed defendant's convictions and remanded for a new trial.[2]

■ On reconsideration, we adhere to our holding that evidence of the September 1988 offense was admissible to establish motive. We also adhere to our holding that the remaining "bad acts" were not sufficiently unique to establish identity based on *modus operandi*. Indeed, the state concedes that the evidence did not meet the requirement, articulated in *State v. Johns*, 301 Or 535, 551, 725 P2d 312 (1986), that

> "evidence of other crimes offered to prove identity is strictly limited to crimes committed 'by the use of a novel means or in a particular manner' so as to earmark the acts as the handiwork of the accused. In other words, to prove identity the prior acts must be a 'signature' crime." (Citations omitted.)

*See also State v. Pinnell*, 311 Or 98, 109-11, 806 P2d 110 (1991).

■ We write only to clarify that, if evidence is offered to prove something *other* than identity, as here, the possibility that that evidence will also have some bearing on the issue of identity does not give rise to the requirement that it satisfy the strict criteria for admission of "signature crime" evidence. If it were otherwise, the whole of OEC 404(3),[3] which

---

[2] Our disposition of the case made it unnecessary to address the assignment of error directed at defendant's sentence.

[3] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity

is addressed to the admissibility of evidence offered for many non-identity purposes, would be subsumed under the rules that relate only to *modus operandi* evidence, whenever evidence offered for those other purposes also had the effect of helping to establish the identity of the perpetrator.

However, having undertaken a careful review of the record and the relevant evidentiary rulings, we have concluded that evidence of the first three offenses was not relevant to establish any non-identity purpose.[4] In the final analysis, each of the acts was relevant only to prove that defendant must have been the perpetrator of these crimes, because he repeatedly commits crimes that involve using personal relationships to gain information, then steal valuables and flee the state. In sum, evidence of the three offenses went *only* to the issue of identity, but did not meet the strict requirements for admission of such evidence. *State v. Johns, supra.* Accordingly, the trial court erred in admitting that evidence.

Reconsideration allowed; opinion clarified and adhered to as clarified.

---

therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

It is well established that that list of "other purposes" is not exclusive. *State v. Johns, supra,* 301 Or at 544.

[4] Defendant had already been convicted of the first two offenses, and had committed the third offense in California, so those offenses provided no motive either to commit the crimes now alleged or to flee Oregon to avoid prosecution. There is no evidence that the three offenses were committed under a common plan or scheme of which the crimes in this case are a part. Evidence of those offenses does not establish that defendant possessed the state of mind required to commit the murder, UUMV and theft alleged here. *See State v. Johns, supra.* And finally, whether defendant acted intentionally was not at issue. The only issue at trial was the identity of the perpetrator.