Argued and submitted May 7, remanded for resentencing; otherwise affirmed
October 29, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KEVIN RICHARD BERG,
*Defendant-Appellant.*

Lake County Circuit Court
040076CR, 040062CR, 040188CR;
A128652 (Control), A128653, A128654

196 P3d 547

Jesse Wm. Barton argued the cause and filed the brief for appellant.

David B. Thompson, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

## SCHUMAN, J.

In three consolidated cases, defendant was charged with various offenses involving the sexual and physical abuse of his two daughters, H and A. After a jury trial, he was convicted of first-degree rape, coercion, first-degree criminal mistreatment, fourth-degree assault, harassment, first-degree sodomy, and first- and third-degree sexual abuse of the victims. He appeals from those judgments of conviction and from the sentence imposed by the trial court, arguing that the court erred in admitting evidence obtained in an unlawful search; in admitting evidence of prior uncharged crimes; in refusing to use one of his requested jury instructions; and in imposing consecutive sentences based on facts that were not found by the jury or admitted by him. We remand for resentencing but otherwise affirm.

The Lake County Sheriff's Department received a report that H had been raped by defendant, her father. Deputy Sheriff Pore received the assignment to respond. He drove to the residence where H, her sister A, her mother, and defendant lived. He spoke with H privately and asked her if the report of rape was true. She indicated that it was. He then explained to her mother why he was there and informed her that he would be transporting H to the police station to conduct an interview. Pore and H departed together for the police station. H's mother followed shortly thereafter.

H's mother was present during the first part of the interview, but, at H's request, she was asked to leave part way through it. During the interview, H stated that she had been sexually abused by defendant and that the abuse had occurred in several locations, including the shop adjacent to the family residence. She stated that, prior to each incident of abuse in the shop, defendant would place a light-colored cloth on the floor for her to sit on and that, after the abuse had ended, he would leave the cloth on a nearby bench. H told Pore that she had last seen some of those cloths approximately two days before the interview.

Based on that interview, Pore believed that he had probable cause that a crime had been committed and that

evidence of that crime, including the cloths described by H, could be found at the family residence. Instead of applying for a warrant, however, he alerted other officers and requested their assistance, then returned to the residence with those officers and knocked on the front door. Receiving no response, he contacted the police station and requested that H's mother, who was still there, return to the family property. When H's mother arrived, Pore asked for her consent to search the property, informing her that "he had probable cause to believe a crime had occurred, and that evidence of a crime was on the property and he wished to collect the evidence." She refused. He then told her that "he would be requesting a search warrant," and that, "while it was up to a judge to decide if a warrant would be issued, * * * in his experience, he had sufficient probable cause and he had never been denied a request for a search warrant." He further stated that, "during his request for the warrant[,] she would not have free roam of the property" and that "he would seal the property until he had obtained the warrant." That conversation lasted approximately 10 minutes and ended when H's mother consented to the search. Pore and another officer then found and seized the cloths that H had described inside the shop.

In his first assignment of error, defendant advances three interrelated arguments to support the contention that the trial court should have granted his motion to suppress evidence, including the cloths, seized during the officers' search of the family residence. First, he argues that H's mother's consent was invalid because it was derived from an unlawful seizure. Second, he argues that, even if the consent did not derive from a prior illegality, it was nonetheless involuntary because she merely acquiesced to the search. Third, he argues that her consent was involuntary because it was given in response to "a threat to take unauthorized action," *i.e.*, a threat to seal the property.[1]

---

[1] Defendant acknowledges that H's mother's consent, if valid, established the lawfulness of the officers' search of the family residence and the seizure of the cloths. *See, e.g., State v. Carsey*, 295 Or 32, 44-45, 664 P2d 1085 (1983) (joint occupants assume the risk that one occupant might permit common area to be searched).

■■ The premise of defendant's first argument—that the seizure of the property led to H's mother's consent, and therefore occurred before it—cannot be reconciled with the court's findings of fact. Property is seized for purposes of Article I, section 9, of the Oregon Constitution, when there is significant interference with a person's possessory or ownership interests in the property. *State v. Juarez-Godinez*, 326 Or 1, 6, 942 P2d 772 (1997). Thus, in accordance with that principle, if Pore and the other officers had sealed the property, that sealing would have effected a seizure. In this case, however, the trial court found that interference was *threatened*, but never effected. Specifically, it found that Pore told H's mother that he "*would* be requesting a search warrant"; that "*during [that] request* for the warrant[,] she would not have free roam of the property"; and that, "in essence[,] he *would* seal the property until he [had] obtained a warrant." (Emphasis added.) Because those findings are supported by evidence in the record, we are bound by them. We agree with the state that no seizure of property occurred in this case; we therefore reject defendant's first argument that the consent derived from an unlawful seizure.

■■ In his remaining arguments, defendant contends that, even if the consent did not derive from a prior illegality, it was nonetheless invalid because it was not voluntary. It is axiomatic that, although a warrantless search is lawful if consented to, the consent must be voluntary, and the state bears the burden of proving voluntariness by a preponderance of the evidence. *State v. Weaver*, 319 Or 212, 219, 874 P2d 1322 (1994); *State v. Stevens*, 311 Or 119, 137, 806 P2d 92 (1991). The relevant inquiry guiding our analysis of that issue is whether, under the totality of the circumstances, the consent was given by an act of free will, as opposed to resulting from coercion, express or implied. *State v. Hall*, 339 Or 7, 20, 115 P3d 908 (2005). In making that determination, we are bound by the trial court's findings of historical fact if they are supported by evidence. *State v. Charlesworth/Parks*, 151 Or App 100, 113, 951 P2d 153 (1997), *rev den*, 327 Or 82 (1998). Whether those facts establish that the consent was voluntary, however, is a legal issue that we review independently. *Id.*

■ Defendant advances two arguments in support of his contention that H's mother's consent was involuntary. He first argues that she merely acquiesced to the search. We agree that "mere acquiescence" to police authority is not voluntary consent. *State v. Little*, 249 Or 297, 302, 431 P2d 810 (1967), *cert den*, 390 US 955 (1968); *State v. Davis*, 133 Or App 467, 474, 891 P2d 1373, *rev den*, 321 Or 429 (1995). Such acquiescence occurs when an individual is not given a reasonable opportunity to choose to consent or when he or she is informed that a search will occur regardless of whether consent is given. *State v. Guzman*, 164 Or App 90, 99, 990 P2d 370 (1999), *rev den*, 331 Or 191 (2000).

*State v. Freund*, 102 Or App 647, 796 P2d 656 (1990), is illustrative. In that case, a police officer told the defendant that he was at her residence "to pick up the marijuana plants that she was growing." *Id.* at 649 (internal quotation marks omitted). When the defendant did not respond, the officer repeated that he was there to pick up the plants and that he "wanted to do it as calmly [and] efficiently as possible." *Id.* (internal quotation marks omitted; brackets in original). We held that the officer's statement could not be characterized as a request for consent:

> "The officer stated that 'he was there' to pick up the marijuana and 'he wanted' to do it calmly. The words used in the first phrase are unconditional; they do not invite a response other than acquiescence. In contrast, the words in the second phrase are supplicatory and do invite a response. Read together, the officer's statement told defendant that she had no choice whether a search would occur; her only option was whether the search and seizure was to be 'calm and efficient.' Defendant merely chose the option favoring calmness and efficiency * * *."

*Id.* at 652; *accord State v. Lowe*, 144 Or App 313, 318, 926 P2d 332 (1996) (no voluntary consent to field sobriety tests where officer " 'had' [the] defendant get out of the car" because "[t]hat is the language of a command"); *State v. Will*, 131 Or App 498, 506, 885 P2d 715 (1994) (the defendant's failure to object to officer's reentry into premises, after officer stated that " 'he would be seizing the narcotic paraphernalia,' " was mere acquiescence).

In contrast, in *State v. Ry/Guinto*, 211 Or App 298, 305-07, 154 P3d 724, *rev den*, 343 Or 224 (2007), we held that the defendant had voluntarily consented where an officer, over the course of approximately one minute, repeatedly, and with "dogged persistence," expressed his desire to search the defendant's car for weapons and sought his consent to do so. During that period, the officer told the defendant seven times "either that he would 'like to' or 'want[ed] to' search the car." *Id.* at 305. At one point, he explicitly asked for consent. At another, he directed the defendant to step out of the car— " 'I'd like you to step out if you would please and let me search your vehicle for a weapon' "—but immediately thereafter returned to the former " 'I'd like to search' " phrasing, expressing that desire twice more. *Id.* Considering the totality of the circumstances in that case, we concluded that the officer's phrasing expressed his desire to receive consent as well as his understanding that he could not search without it and that his isolated directive was not problematic because it was preceded and followed by nonimperative requests. *Id.* at 305-06.

■■ In the present case, we disagree with defendant's assertion that H's mother's "submission to the search was mere acquiescence, and not consent." Pore testified,

> "What I told [H's mother] was that again, she was free. She did not have to let me search, * * * that I was going to make application for a search warrant. I stressed that it did not mean that I was going to get it but that I was going to apply for a search warrant. * * * That I probably would get the warrant, but again, told her it did not guarantee that I would."

In response to the prosecutor's question, "Did you give her time to decide or did you tell [her] you were going [to] search no matter what?" Pore responded:

> "There was no issue of I am going to search no matter what because if she had denied consent, then whether or not I was going to search was going to be up to the Court, not up to me."

The trial court evidently believed Pore; it found that he "asked" H's mother for her consent. Pore expressed a desire

to receive consent and conveyed to H's mother his understanding that he could not search without it. Pore's statements did not indicate that a search was to occur "regardless of whether consent [was] given," *Guzman*, 164 Or App at 99, but, rather, that a search would occur *if* and *when* a warrant was successfully obtained. An officer is free to inform a person that, in the event that consent is withheld, he will seek a search warrant. *State v. Hirsch*, 267 Or 613, 622, 518 P2d 649 (1974). Pore's statement that he had previously been successful in obtaining search warrants, while meant to influence H's mother's decision, does not, under the circumstances, render her consent involuntary. The state has therefore met its burden to show that H's mother's consent was not "mere acquiescence."

Finally, we consider defendant's argument that H's mother's consent was involuntary because it resulted from Pore's threat to seal the property while he obtained a search warrant. That threat, defendant argues, constituted a material misrepresentation of what the law permitted because Pore "lacked authority to seize the property and oust [H's mother] from it." Such a misrepresentation, according to defendant, rendered the consent involuntary. In support of that argument, he cites Justice Carson's concurring opinion in *State v. Williamson*, 307 Or 621, 772 P2d 404 (1989), for the proposition that police officers may not threaten to do what the law prohibits because such threats constitute constitutionally impermissible coercion. In that case, the officer told the defendant that, unless the defendant consented, he would detain the defendant's truck until he could obtain a warrant. Justice Carson concluded that the officer "could not lawfully assert that he would detain the [truck because] his statement that he would do so was a material misrepresentation of what the law permitted, consequently invalidating [the] defendant's consent to search." 307 Or at 627 (Carson, J., concurring); *accord Hall*, 339 Or at 21 (recognizing and outlining "material misrepresentation" argument). The state concedes that consent to search may be rendered involuntary if given in response to an officer's false claim of authority, but contends that defendant failed to preserve that argument for appeal. For the reasons stated below, we agree with the state.

 To preserve an argument for appeal, "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). Rules of preservation are meant to ensure that the parties' positions are presented clearly to the trial court and that parties are not taken by surprise, misled, or denied opportunities to meet an argument. *State v. Olivar*, 216 Or App 126, 135, 171 P3d 1006 (2007), *rev den*, 344 Or 110 (2008). The question of whether Pore materially misrepresented that he could lawfully seal defendant's property while attempting to obtain a search warrant was never presented to the trial court. Defendant argued only that the officers *had* unlawfully seized the property—an argument that we have rejected—and that H's mother's consent was a product of that unlawful seizure. Had defendant argued "material misrepresentation," the trial court could have determined whether exigent circumstances had justified the *threatened* warrantless seizure of the property—a determination that the trial court did not make and on which we express no opinion. The argument that was presented to the trial court, however— that H's mother's consent derived from an unlawful seizure— required no such determination. Thus, because the trial court "was not alerted to the substance of defendant's ['material misrepresentation'] position on appeal," *id.* at 136, we will not consider that argument.

In sum, we reject defendant's first assignment of error. The search that yielded the evidence that defendant sought to suppress was a valid consent search. It did not derive from a prior illegality, nor was it mere acquiescence.

In his second assignment of error, defendant argues that the trial court should have granted his motion *in limine* to exclude evidence that he (a) sexually assaulted H and A in 1997, (b) physically assaulted H and A, and (c) physically assaulted their mother. At the pretrial hearing on that motion, defendant argued that the evidence was propensity evidence and thus inadmissible under OEC 404(3). Alternatively, he argued that, to the extent that the evidence was

admissible under OEC 404(3), it was inadmissible under OEC 403 because its probative value was substantially outweighed by the danger of unfair prejudice.[2] The trial court rejected both of those arguments. On appeal, defendant renews the arguments that he made at trial regarding the admissibility of the evidence under OEC 404(3) and OEC 403. He also contends that the evidence should have been excluded in accordance with the doctrine of issue preclusion. The state responds that the trial court properly admitted the evidence and that defendant's issue preclusion argument is not preserved. We agree with the state on both points.

We begin with a brief discussion of the legal principles governing our analysis of defendant's arguments under the Oregon Evidence Code. OEC 404(3)—in accordance with the general prohibition in OEC 404(2) against the use of evidence of a person's character to prove that the person "acted in conformity therewith on a particular occasion"—prohibits the admission of evidence of other crimes, wrongs, or acts to prove a person's character in order to show that the person has acted in conformity with that character, but allows for the use of such evidence for any other relevant purpose. *See State v. Johns*, 301 Or 535, 548, 725 P2d 312 (1986) (OEC 404(3) is inclusionary rather than exclusionary). Whether evidence of prior bad acts is relevant for a noncharacter purpose, and thus admissible under OEC 404(3), is a question of law. *State v. Westby*, 117 Or App 14, 17-18, 843 P2d 973 (1992), *adh'd to as modified on recons*, 124 Or App 265, 862 P2d 1318 (1993), *rev den*, 318 Or 351 (1994).

However, OEC 404(3) does not *require* that the court admit evidence of other crimes, wrongs, or acts; it provides

---

[2] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

only that such evidence "may * * * be admissible." Thus, even if evidence of prior bad acts qualifies for admission under OEC 404(3), it may nonetheless be excluded under OEC 403 if the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Thus, in general, to be admitted under OEC 404(3),

> "(1) [t]he evidence must be independently relevant for a noncharacter purpose; (2) the proponent of the evidence must offer sufficient proof that the uncharged misconduct was committed and that [the] defendant committed it; and (3) the probative value of the uncharged misconduct evidence must not be substantially outweighed by the dangers or considerations set forth in OEC 403."

*State v. Johnson*, 313 Or 189, 195, 832 P2d 443 (1992) (footnote omitted).

In criminal actions, however, OEC 404(4) provides that evidence of other crimes, wrongs, or acts by the defendant is admissible if relevant except as otherwise provided by the state or federal constitutions or certain statutes.[3] *See State v. Wyant*, 217 Or App 199, 204, 175 P3d 988 (2007), *rev den*, 344 Or 558 (2008) ("OEC 404(4) * * * does not permit * * * balancing under OEC 403, unless it is required by due process considerations."); *see also State v. Phillips*, 217 Or App 93, 98, 174 P3d 1032 (2007) (OEC 404(4) does not permit balancing under OEC 403, except as required by state or federal constitution); *State v. Cavaner*, 206 Or App 131, 135, 135 P3d 402 (2006), *rev den*, 341 Or 197 (same).

We first address whether the evidence was relevant for a noncharacter purpose under OEC 404(3). We begin with the allegations that defendant sexually assaulted H and A in

---

[3] OEC 404(4) provides:

"In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by:

"(a) ORS 40.180, 40.185, 40.190, 40.195, 40.200, 40.205, 40.210 and, to the extent required by the United States Constitution or the Oregon Constitution, ORS 40.160 [OEC 403];

"(b) The rules of evidence relating to privilege and hearsay;

"(c) The Oregon Constitution; and

"(d) The United States Constitution."

1997. The trial court admitted evidence of those allegations, as noted above, stating that the evidence was "relevant * * * to show a pattern. As far as [d]efendant having allegedly engaged in similar type of conduct over a long period of time." Defendant argues that the trial court's admission of the evidence on that basis "constituted admitting it to prove propensity." However, evidence of other sexual contacts between a defendant and a particular victim offered to show the sexual predisposition that the defendant had for that victim is relevant for a noncharacter purpose—that is, to show the sexual inclination of the defendant towards that victim. *State v. McKay*, 309 Or 305, 308, 787 P2d 479 (1990). Thus, evidence of the 1997 allegations was admissible to show defendant's sexual predisposition toward H and A. Because the trial court correctly admitted the evidence, then, it is unnecessary to determine whether the trial court's stated basis for admitting it—"to show a pattern"—was the correct basis. *See State v. Nielsen*, 316 Or 611, 629, 853 P2d 256 (1993) ("Where a trial judge makes a correct ruling admitting evidence but articulates an erroneous reason for it, there is no need to reverse.").

Regarding the evidence of defendant's past physical abuse of H, A, and their mother, defendant does not challenge on appeal the trial court's admission of that evidence as relevant for a noncharacter purpose under OEC 404(3)—namely, that the evidence was relevant to show why H and A may have delayed in disclosing the abuse. In any event, such an argument would be unavailing. *See State v. Zybach*, 308 Or 96, 99-100, 775 P2d 318 (1989) (evidence offered to show why a victim delayed in reporting incidents of sexual abuse is relevant for a noncharacter purpose).

Defendant argues, however, that, even if the trial court did not err in concluding that the contested evidence was relevant under OEC 404(3), under OEC 403, the evidence was nonetheless inadmissible because the danger of unfair prejudice resulting from its admission outweighed its probative value. The state responds that OEC 403 does not provide a basis for excluding the evidence because OEC 404(4) now provides that, in criminal actions, the admission of other relevant crimes, wrongs, or acts by a defendant is limited only by the state or federal constitution or statutes

that do not apply in this case. Defendant, while "acknowledg[ing] that OEC 404(4) adds a complication to an OEC 403 analysis," nonetheless maintains that OEC 404(4)(a), by its plain terms, requires OEC 403 balancing because (1) OEC 403 "codifies a due process requirement"; and (2), to the extent that OEC 404(4) would deprive criminal defendants of the use of OEC 403 while leaving it available to the prosecution, that rule "violate[s] the due process requirement that rules of criminal procedure be available to both parties equally." To the extent that defendant is arguing that OEC 403 requires balancing in every case as a matter of constitutional law, that argument cannot be squared with *Wyant*, *Phillips*, and *Cavaner*, cases in which we held that the constitution did not require balancing. Further, in the present case, the state did not avail itself of OEC 403 balancing; we therefore have no occasion to consider defendant's due process argument based on differential treatment. He presents no other argument in support of his contention that admitting the evidence without balancing in this particular case violates the Due Process Clause. Thus, in accordance with *Wyant*, *Phillips*, and *Cavaner*, we reject defendant's challenge to the constitutionality of OEC 404(4) as applied here and conclude that the trial court properly admitted the evidence in this case.

Defendant's final argument with respect to his second assignment of error is that the state was estopped from introducing evidence of the 1997 allegations of defendant's sexual abuse of H and A in defendant's criminal trial because it had previously, in a jurisdictional hearing before the juvenile court pursuant to ORS 419B.100, failed to prove, "by a preponderance of competent evidence," that the acts underlying those allegations had occurred. ORS 419B.310(3);[4] *see also Rugemer v. Rhea*, 153 Or App 400, 410, 957 P2d 184 (1998) (proponent has burden to "prove by a preponderance of the evidence * * * that the [uncharged misconduct] occurred and that the person against whom it is offered committed it"). Thus, defendant contends, because the "state had to do

---

[4] Subsection (3) of ORS 419B.310, which outlines certain requirements for jurisdictional hearings, provides, in part, "The facts alleged in the petition showing the child to be within the jurisdiction of the court as provided in ORS 419B.100(1), unless admitted, must be established by a preponderance of competent evidence."

exactly what it tried but failed to do in the 1997 jurisdictional hearing"—*i.e.*, prove by a preponderance of the evidence that the allegations occurred—the doctrine of issue preclusion applies with respect to those allegations. The state responds that defendant failed to preserve that argument.

In the pretrial hearing on defendant's motion *in limine*, defense counsel informed the trial court,

> "We believe that there are two issues. One, you have to make a determination that these acts occurred, that there was a likelihood these acts occurred * * *. You have to make a determination. * * *
>
> "My understanding, particularly in the '97 case was there was a determination by the sitting Circuit Court Judge that these acts did not occur to the basis that he would not grant jurisdiction [to] the juvenile court. So, one you got sort of a *res judicata* issue or I guess it is a claim[ ] preclusion issue. Another judge has ruled there wasn't enough evidence. You have to go back and say well, I think there was and I guess that is an issue you will have to decide."

Defendant asserts that the above statements constituted an argument to the trial court that "preclusion principles barred the state from using the [1997] allegations in [defendant's] criminal prosecution."

 Assuming without deciding that the trial court erred, defendant's statements to the trial court invited that error. An appellant who "was actively instrumental in bringing * * * about" an error "cannot be heard to complain, and the case ought not to be reversed because of it." *Anderson v. Oregon Railroad Co.*, 45 Or 211, 217, 77 P 119 (1904). The doctrine of "invited error" is usually invoked when a party invites the trial court to rule in a certain way and the circumstances suggest that the party will be bound by the ruling or, at least, will not later seek a reversal on the basis of the ruling. *State v. Ferguson*, 201 Or App 261, 270, 119 P3d 794 (2005), *rev den*, 340 Or 34 (2006). The doctrine's purpose is "to ensure that parties do not blame the court for their intentional or strategic trial choices that later prove unwise and then, to the trial court's surprise, use the error that they invited to obtain a new trial." *Id.* (internal quotation marks

omitted). Here, defendant expressly invited the trial court to decide whether there was enough evidence that defendant had committed the 1997 allegations to admit them under OEC 404(3). Defendant therefore cannot assert any such error as a basis for reversal of the trial court's decision.

In his third assignment of error, defendant argues that, if we decide that the evidence of prior bad acts was admissible, we should nonetheless hold that the trial court erred in refusing to give defendant's proposed limiting instruction to the jury regarding that evidence. Defendant contends that the court's instruction was incomplete in two respects: It failed to inform the jurors that they could not consider the evidence of prior bad acts to conclude that defendant had acted in conformity with the allegations of that misconduct, and it did not describe the purposes for which the jury *could* consider that evidence. As explained below, we disagree.

The trial court gave the following instruction regarding the uncharged conduct evidence:

"The [d]efendant's character is not an issue in this case. By that I mean, whether the [d]efendant is a good person or a bad person. The issue is whether the [d]efendant is guilty of the crime charged. Now you have heard evidence of alleged crimes, wrongs or acts not charged in the indictment. While you may consider the evidence, such evidence is not to be considered to prove [d]efendant's character, because as I have told you, the [d]efendant's character is not an issue."

Defendant proposed the following supplemental instruction:

"You have heard evidence of other acts and crimes that are not charged in the indictments. While you may consider such evidence in your deliberations, you may not consider such evidence to conclude that because the defendant may have engaged in those acts in the past, that he committed the crimes charged in the indictments."

The court refused to give defendant's instruction and defendant took exception, stating, "I don't argue with what you read, but I don't believe it goes far enough in explaining the propensity evidence, and the propensity rule under [OEC 404(3)]."

■■ Where evidence is admitted for a limited purpose—such as for a relevant noncharacter purpose under OEC 404(3), as in this case—it is error for the court to refuse to give a requested instruction limiting the jury's consideration of the evidence to that noncharacter purpose. *State v. Reyes*, 209 Or 595, 630-31, 308 P2d 182 (1957). However, such refusal is error only if the defendant's proposed instruction is clear and correct in all respects, both in form and in substance. *Beglau v. Albertus*, 272 Or 170, 179, 536 P2d 1251 (1975). In this case, defendant's proposed instruction is neither clear nor correct. It states that the jury could not consider the prior bad acts evidence "to conclude that because the defendant may have engaged in those acts in the past, that he committed the crimes charged in the indictments." That instruction suggests, or at least might be construed to suggest, that the jury could not consider the evidence at all in deciding whether defendant was or was not guilty of the acts charged. As explained above, however, evidence of the earlier acts was relevant to the determination of defendant's guilt because it showed defendant's sexual predisposition toward H and A, and it showed why H and A may have delayed in disclosing the abuse; the evidence, then, *could* properly be considered in determining whether defendant was guilty. Accordingly, the trial court did not err in refusing to give defendant's proposed instruction to the jury.

In his fourth assignment of error, defendant maintains that, in imposing consecutive sentences based on facts not found by a jury, the trial court ran afoul of *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), and *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), as construed in *State v. Ice*, 343 Or 248, 170 P3d 1049 (2007), *cert granted*, ___ US ___ , 128 S Ct 1657 (2008) (facts supporting imposition of consecutive sentences must be admitted or found by a jury).

The law and facts involved in that assignment are procedural in nature and not in dispute. As relevant to this case, the court may impose consecutive sentences for offenses that "do not arise from the same continuous and uninterrupted course of conduct," ORS 137.123(2), and, if the

offenses *do* arise from the same continuous and uninterrupted course of conduct, when they involve injury to different victims, ORS 137.123(5)(b).

In Case Number A128652, defendant was charged with one count of first-degree rape, ORS 163.375 (Count 1), and three counts of first-degree sodomy, ORS 163.405 (Counts 2 through 4). As to each of those counts, the indictment alleged that the offense occurred "between the 15th day of April, 2002 and the 20th day of March, 2004," and that the victim was H. Counts 2 through 4 also alleged where each offense occurred: Count 2 "while on the couch," Count 3 "while in the victim's bedroom," and Count 4 "while in the defendant's shop." The jury instructions and jury verdict forms differentiated among Counts 2 through 4 on that basis, identifying the site of each offense ("on the couch," "in victim's bedroom," and "in the defendant's shop"). A jury found defendant guilty of those counts.

In Case Number A128654, defendant was charged with one count each of first-degree sodomy, ORS 163.405 (Count 1), and first-degree sexual abuse, ORS 163.427 (Count 2). As to both counts, the indictment alleged that the victim was A. It further alleged that the offense in Count 1 occurred "between the 1st day of January, 2004 and the 27th day of June, 2004," and that the offense in Count 2 occurred "between the 27th day of June, 2003 and the 27th day of June, 2004" and "while in the defendant's bedroom." The jury instructions and jury verdict forms both contained the same detail regarding the location of the offense charged in Count 2. A jury found defendant guilty of both counts.

Over defendant's objection that *Apprendi*, *Blakely*, and *Ice* required jury findings in support of consecutive sentences, the trial court ordered that the sentences for Counts 1 through 4 in Case Number A128652 be served consecutively; that the sentence for Count 1 in Case Number A128654 be served consecutively to the sentence for Count 1 in Case Number A128652; and that the sentences for Counts 1 and 2 in Case Number A128654 be served consecutively to each other.

On appeal, defendant reasserts his *Apprendi/Blakely* challenge. The state, while maintaining that *Ice* was

decided incorrectly, acknowledges that *Ice* is controlling in this case as to the legal principle, but urges this court to nonetheless affirm defendant's sentence on the ground that any error in failing to obtain a jury finding in support of consecutive sentences was harmless.

We first consider whether, on this record, the jury necessarily found beyond a reasonable doubt the facts to support the trial court's imposition of consecutive sentences, in which case there is no error; in some cases it may be possible to determine from a jury's guilty verdict that the jury actually and necessarily found those facts, albeit implicitly, *see State v. Hagberg*, 345 Or 161, 169, 190 P3d 1209 (2008).

█ We cannot say that, by finding defendant guilty of Counts 1 through 4 in Case Number A128652, the jury necessarily found beyond a reasonable doubt the facts necessary to support the imposition of consecutive sentences as to those counts. The indictment in that case alleged that each of the offenses occurred during the same time period—between April 15, 2002 and March 20, 2004—and that each involved the same victim—H—and there is nothing in the jury verdict forms to indicate that the offenses did not occur as part of one continuous and uninterrupted course of conduct. ORS 137.123(2). Similarly, we cannot say that the jury necessarily found that the offenses in Counts 1 and 2 in Case Number A128654 did not occur as part of one continuous and uninterrupted course of conduct because the time periods within which the indictment alleges that the offenses charged in those counts occurred overlap to some degree—that is, between January 1, 2004 and June 27, 2004—and the jury instructions and verdict forms contain no further clarification. It follows that the trial court violated defendant's Sixth Amendment jury trial rights when it ordered those sentences to be served consecutively.

The question remains whether that error was harmless beyond a reasonable doubt. In *State v. Bowen*, 220 Or App 380, 383, 185 P3d 1129 (2008), we held that, where "overwhelming" evidence at trial established that the multiple counts of which the defendant was convicted were distinct from another, we could say with "complete confidence" that, on remand, the jury would have found that the offenses did

not occur as part of a continuous and uninterrupted course of conduct for purposes of ORS 137.123(2). Accordingly, we concluded in that case that the court's error in imposing consecutive sentences under that statute, and based on facts not found by a jury, was harmless beyond a reasonable doubt. *Bowen*, 220 Or App at 383-84. We do not reach the same conclusion in this case. We are not persuaded by the scant record as to that issue that the jury would have found, beyond a reasonable doubt, that the offenses charged in Counts 1 through 4 of Case Number A128652 and Counts 1 and 2 of Case Number A128654 did not occur as part of one continuous and uninterrupted course of conduct. Accordingly, we remand for resentencing. ORS 138.222(5)(a) (if appellate court finds any sentencing error, the court "shall remand the entire case for resentencing").

Remanded for resentencing; otherwise affirmed.