Argued and submitted June 27, reversed and remanded December 19, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSHUA CURTIS JEPSON,
*Defendant-Appellant.*

Tillamook County Circuit Court
091150; A146418

292 P3d 660

Daniel C. Bennett, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Douglas F. Zier, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief

were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Defendant appeals a judgment of conviction for violating ORS 166.270 by being a felon in possession of a firearm. He contends that the trial court erred in denying his motion to suppress evidence found in a warrantless search of his residence. The trial court found that defendant consented to the search; on appeal, the state advances that argument and also contends that the search did not violate any of defendant's rights because, at the suppression hearing, he disclaimed possession of the incriminating evidence. We reverse and remand.

We state the facts consistently with the trial court's findings, which are supported by evidence in the record. *State v. Hall*, 339 Or 7, 10, 115 P3d 908 (2005). Tillamook County Detective Garcia, accompanied by a Department of Human Services (DHS) employee, went to the residence of defendant and his girlfriend, Fletcher, to investigate a report that Fletcher had shot defendant's son with a BB gun. Garcia and the DHS worker explained the purpose of their visit, and they interviewed defendant and Fletcher on the front porch. Fletcher said that she had a BB gun that she used to keep horses away from her corn patch, but denied shooting the child.

During the conversation, at some point while defendant was present, Garcia asked if there were any other guns in the house. Fletcher indicated that there were two: a shotgun and a handgun. Garcia told defendant and Fletcher that she knew that they were felons and were not supposed to possess firearms. Fletcher explained that she thought she was allowed to have the guns because she used them in her business, a mobile slaughter service. Defendant stated that he thought he was allowed to possess the guns because eight years had passed since his felony conviction. Garcia told defendant and Fletcher that, because she was not sure about the law, she would check and return if there was a problem.

About an hour later, Garcia returned to the residence with Deputy Prock. When Garcia and Prock arrived, defendant was again on the porch, and Garcia told

him that she had checked and had learned that he could not possess the guns. When Garcia started to read defendant his *Miranda* rights, defendant went into the house to advise Fletcher of the situation. Fletcher and defendant returned to the porch, and Garcia finished reading them their *Miranda* rights. Both defendant and Fletcher indicated that they understood and that they were willing to answer questions. They again explained why they thought that they could lawfully possess the guns. Garcia then said, "[W]e're going to have to take the firearms." Prock asked Fletcher where the guns were located, and Fletcher gave detailed directions to the guns' location in the bedroom. Prock then entered the house and retrieved the firearms while Garcia, defendant, and Fletcher remained on the porch. Neither Garcia nor Prock explicitly asked for permission to retrieve the guns from inside the house, and neither Fletcher nor defendant voiced any objection to Prock entering the house and taking the weapons.

Defendant was subsequently charged with two counts of felon in possession of a firearm, ORS 166.270. He filed a motion to suppress the evidence obtained as a result of the warrantless search of his residence.[1] At the hearing, Garcia and defendant both testified that defendant told Garcia that he believed he was entitled to possess firearms because of the passage of time since his felony conviction. The trial court ultimately concluded that the encounter between defendant and the police officers was mere conversation and, therefore, not a constitutionally significant seizure; that defendant was not unlawfully questioned; and that defendant voluntarily consented to the search because he had not objected to Prock entering the house and retrieving the guns. Defendant entered a conditional plea to one count of felon in possession of a firearm, reserving his right to appeal, ORS 135.335(3).

On appeal, defendant does not challenge the trial court's conclusion that the encounter was not a seizure or its conclusion that he was not unlawfully questioned. Rather, he argues that the search was unlawful because it was not

---

[1] Fletcher was apparently also charged with felon in possession of a firearm and her motion to suppress was considered at the same hearing as defendant's motion, but she is not a party to this appeal.

authorized by a warrant and it did not fit within any exception to the warrant requirement. The state responds that under the totality of the circumstances, defendant's failure to protest when the officers announced that they were going to enter the house amounted to implicit, voluntary consent and that, in any event, suppression is not necessary because defendant waived any possessory or privacy interest in the guns.

A warrantless search violates Article I, section 9, of the Oregon Constitution unless justified by an exception to the warrant requirement; consent is one such exception. *State v. Dunlap*, 215 Or App 46, 53, 168 P3d 295 (2007). Where the state relies on consent to validate a warrantless search, it must prove by a preponderance of the evidence that consent was voluntary. *Id.* The test for voluntariness is whether, under the totality of the circumstances, the consent was given by an act of a defendant's free will, as opposed to resulting from express or implied coercion. *Id.* In making that determination, we are bound by the trial court's findings of historical fact if they are supported by evidence. *State v. Berg*, 223 Or App 387, 391, 196 P3d 547 (2008), *adh'd to as modified on recons*, 228 Or App 754, 208 P3d 1006, *rev den*, 346 Or 361 (2009). Whether those facts establish that the consent was voluntary, however, is a legal issue that we review independently. *Id.*

Here, defendant does not argue that any consent he gave was involuntary; rather, he claims that he did not consent to Prock entering or searching the house *at all.* We have held that consent may be manifested by conduct, *see State v. Martin*, 222 Or App 138, 142, 193 P3d 993 (2008), *rev den*, 345 Or 690 (2009) (so stating), but that a defendant's "mere acquiescence" to police authority does not constitute consent, *see, e.g.*, *id.* at 140-41, 143-44 (state did not meet its burden of proving that the defendant's actions amounted to anything more than passive acquiescence to the officers' entry into her home where the defendant, who was nude, "flung open" the front door, turned, and ran into a back bedroom); *Berg*, 223 Or App at 392 (stating principle). "Such acquiescence occurs when an individual is not given a reasonable opportunity to choose to consent or when he

or she is informed that a search will occur regardless of whether consent is given." *Id.*.

Defendant argues that this case is analogous to *State v. Freund*, 102 Or App 647, 652, 796 P2d 656 (1990), where we held that the state failed to prove that the defendant consented to the search and seizure of marijuana plants on her property. In that case, a police officer told the defendant that he "was there to pick up the marijuana plants that she was growing" and that he "wanted to do it as calmly [and] efficiently as possible." *Id.* at 649 (internal quotation marks omitted; brackets in original). We held that the officer's statement could not be characterized as a request for consent:

> "The officer stated that 'he was there' to pick up the marijuana and 'he wanted' to do it calmly. The words used in the first phrase are unconditional; they do not invite a response other than acquiescence. In contrast, the words in the second phrase are supplicatory and do invite a response. Read together, the officer's statement told defendant that she had no choice whether a search would occur; her only option was whether the search and seizure was to be 'calm and efficient.' Defendant merely chose the option favoring calmness and efficiency * * *."

*Id.* at 652. We further held that the "defendant's acquiescence in [the officer's] request that she show them where the plants were did not constitute a voluntary consent, given the events that proceeded it. [The officer] did not ask, 'May we search?' but 'Will you show us?'" *Id.*

In contrast, in *State v. Ry / Guinto*, 211 Or App 298, 303, 306-07, 154 P3d 724, *rev den*, 343 Or 224 (2007), we held that the defendants voluntarily consented where the officer, over the course of approximately one minute, repeatedly, and with "dogged persistence," expressed his desire to search the defendants' car for weapons and sought their consent to do so. During that period, the officer told the defendants seven times "either that he would 'like to' or 'want[ed] to' search the car." *Id.* at 305 (brackets in original). At one point, he explicitly asked for consent. *Id.* At another, he directed the defendants to step out of the car, "'I'd like you to step out if you would please and let me search your vehicle for a weapon,'" but immediately thereafter returned to the "'I'd

like to search'" phrasing. *Id.* Considering the totality of the circumstances in that case, we concluded that the officer's phrasing expressed his desire to receive consent as well as his understanding that he could not search without it and that his isolated directive was not problematic because it was preceded and followed by nonimperative requests. *Id.* at 305-06.

In the present case, we agree with defendant that Garcia's statement that "we're going to have to take the firearms," like the officer's statement in *Freund* that he "was there to pick up the marijuana," was not a request to obtain consent, but rather, an unconditional statement, which did not invite a response other than acquiescence. Similarly, Prock asking "where the guns were," in light of the preceding statement, was not a question expressing a desire to seek consent, but an additional statement of the officers' intent to seize the guns. Unlike the officer's phrasing in *Ry / Guinto*, here, the officers' statements did not express an understanding that they would not, and could not, search without defendant's and Fletcher's consent. Thus, we cannot conclude that Fletcher's and defendant's response, giving directions to the guns' location and standing by without objection, while Prock entered the house and seized the guns, constituted voluntary consent, given the events that proceeded it. Because the state did not meet its burden of proving that defendant's response amounted to anything more than passive acquiescence to Prock's entry into the home, we conclude there was no consent for the search.

However, the state argues (in a footnote) that "[i]t is not clear that defendant—in contrast to Fletcher—can assert a constitutional challenge to the seizure of the guns because he disclaimed any possessory or privacy interest in them." In support of this theory, the state cites *State v. Brown*, 183 Or App 434, 52 P3d 1110 (2002), and *State v. Tanner*, 304 Or 312, 745 P2d 757 (1987). We reject the state's argument for two independently adequate reasons. First, it is an exaggeration to say that defendant disclaimed ownership. He certainly did not do so at the time of the search. There, his only exculpatory assertion—he believed that the bar to possessing firearms due to his felony conviction had expired—was an acknowledgment that he

*did* possess the guns. The only alleged disclaimer occurred at the suppression hearing itself, and that "disclaimer" consisted entirely of a one-word answer to a leading question from the prosecutor on cross-examination:

"Q [by prosecutor]: Mr. Jepson, those—You didn't have an ownership interest in those guns, correct?

"A [by defendant]: Correct.

"Q: You didn't care if the cops took them or not?

"A: Well—

"Q: That day?

"A: No, not really."

Second, and more fundamentally, the state's theory that the search was lawful because of defendant's disclaimer was never advanced at the suppression hearing. The state's sole theory of the case was that the search fell within the consent exception to the warrant requirement because it was voluntary and it was unrelated to any unlawful seizure. Defendant, for his part, argued that the encounter was a stop, that his passive acquiescence was not consent, and that, if it was consent, it was the involuntary product of coercive circumstances. The issue of disclaimer never arose. If it had, the record would certainly have developed differently, because whether a person's disclaimer rises to the level of a waiver of his rights under Article I, section 9, of the Oregon Constitution is a heavily fact-intensive inquiry. *See State v. Brown*, 348 Or 293, 298-306, 232 P3d 962 (2010) (lengthy discussion of what facts support conclusion that the defendant's actions amounted to waiver; discussing cases).[2]

Reversed and remanded.

---

[2] Because the issue was not adequately raised below or developed on appeal, we express no opinion on whether a defendant's disclaimer of ownership of *items seized* during an unlawful *search* of a defendant's *property* can or cannot justify suppression of the items when the disclaimer occurs only at a subsequent suppression hearing or trial.