Argued and submitted December 28, 2012, affirmed July 31, petition for review denied October 17, 2013 (354 Or 386)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAMISON MICHAEL BRIGGS,
*Defendant-Appellant.*

Deschutes County Circuit Court
MI091303; A146377

307 P3d 564

Elizabeth G. Daily, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Justice J. Rillera, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

### SCHUMAN, P. J.

Defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII) and driving while suspended or revoked. He was arrested after Brown, a Deschutes County deputy sheriff, responded to an anonymous report indicating that a man was intoxicated and driving erratically in a resort parking lot. The deputy arrived at the scene and spotted defendant. Believing that defendant matched the informant's description, Brown pursued him and made a warrantless entry into one of the resort's guest condominiums, where he found and subsequently arrested him. At a pretrial hearing, defendant argued that Brown's warrantless entry was unlawful and moved to suppress the resulting evidence. The state responded that Brown entered with consent and, in any event, even if there was no consent, his entry was justified due to exigent circumstances. The trial court denied defendant's motion. Defendant entered a conditional guilty plea, reserving his right to appeal the denial of his motion to suppress. ORS 135.335(3). We now affirm.

When reviewing a denial of a motion to suppress, we are bound by the trial court's findings of historical fact if they are supported by evidence in the record. *State v. Marshall*, 254 Or App 419, 421, 295 P3d 128 (2013). A trial court's conclusion, based on those facts, that a warrantless search or seizure was justified by a recognized exception to the warrant requirement is a matter of law, which we assess independently. *State v. Dahl*, 323 Or 199, 915 P2d 979 (1996); *Marshall*, 254 Or App at 421.

On April 26, 2009, Deschutes County Deputy Sheriff Brown responded to an anonymous phone call reporting that a "highly intoxicated" male was "driving erratically" in the parking lot of a local resort, the Inn of the Seventh Mountain. The caller described the driver as "approximately 5'8", 170 pounds, with facial hair, wearing dark clothing and a baseball cap, and driving an older Camaro that was red with gray fenders." Brown responded to the scene at approximately 12:06 a.m. and saw a parked vehicle matching the description provided by the informant. Brown ran the vehicle's plates and discovered that the car was registered to a

man whose driver's license had been suspended following a DUII conviction. After getting out of his patrol car, Brown spotted defendant "walking down the stairs from the building directly in front of where the car was parked." Brown noticed that defendant "[h]ad the dark clothing, the baseball cap, and about the right height and weight." Brown shone his flashlight at defendant and asked if they could talk. Defendant "turned around and ran back up to the room, banged on the door, and then went inside and closed the door."

Lieutenant Nelson arrived on the scene shortly thereafter. The two officers knocked on the door of the condominium that defendant had entered. A young woman answered. The officers could see that there were between 15 and 20 people in the room. Brown noticed that many of them were holding red plastic cups and that the room contained bottles of alcoholic beverages. He also noticed that the room smelled of alcohol. Brown told the woman who had answered the door, "I need to talk to the person that just ran in here." He then asked her whose room it was. She explained that she had rented it for a party. Brown then said, "Well, where's the gentleman * * * that just ran in?" The woman stepped aside, motioning to the back of the room, and said, "He's in the back." Brown then entered the room.[1]

After locating defendant, Brown took him outside for questioning and field sobriety tests. Brown then arrested defendant for driving while suspended and DUII. Defendant was taken to Deschutes County Jail, where he consented to a breath test. The test indicated that defendant had a blood alcohol content of 0.10 percent.

---

[1] Brown first testified, "I told [the woman at the door] I *wanted to* come in and talk to the guy that just ran in * * *." (Emphasis added.) However, when asked by the court to describe the interaction as accurately as possible, Brown testified as follows:

"I said 'I need to talk to the person that just ran in here.' And that, then I had asked her whose room this was. And she said, 'I rented it for our,' or 'it's my room, I rented it for our party.'

"And I said, 'well, where's the gentleman or the guy that just ran in?' She stepped aside and motioned to the back and said 'he's in the back of the room' or 'he's in the back.' That's when I went inside."

The trial court relied on this second version of Brown's statement when deciding defendant's motion to suppress.

Before trial, defendant moved to suppress any and all evidence that came to light after his arrest. He argued that the evidence should be suppressed because Brown did not have a warrant and because no exception justified the entry into the condominium. The state responded by offering two potential justifications. First, the state argued that the warrantless entry was justified because the woman renting the condominium consented to having the room entered and searched by police. Second, the state argued that, even if no consent was given, the entry would still be justified because of exigent circumstances. On appeal, the parties reprise their earlier arguments.

A warrantless search violates Article I, section 9, of the Oregon Constitution unless justified by an exception to the warrant requirement. *State v. Dunlap*, 215 Or App 46, 53, 168 P3d 295 (2007).

> "'Under the consent exception to the warrant requirement, the state must prove * * * that someone having the authority to do so voluntarily gave the police consent to search the defendant's person or property and that any limitations on the scope of the consent were complied with.'"

*Marshall*, 254 Or App at 427 (quoting *State v. Weaver*, 319 Or 212, 219, 874 P2d 1322 (1994)). A warrantless entry into a private residence is also justified if an officer has both probable cause to arrest a suspect and exigent circumstances exist. *Dahl*, 323 Or at 209. The burden is on the state to prove by a preponderance of the evidence that a warrantless search was valid under a recognized exception to the warrant requirement. ORS 133.693(4).

When deciding whether a particular interaction amounts to consent, courts distinguish between voluntary consent and mere passive acquiescence to the search. *State v. Freund*, 102 Or App 647, 652, 796 P2d 656 (1990). Consent may be manifested by conduct as well as words. *State v. Martin*, 222 Or App 138, 142, 193 P3d 993 (2008). We will, however, pay close attention to the words used by an officer who requests consent to perform a warrantless search. When those words do not provide the listener with a reasonable opportunity to choose to consent, or when those words leave the listener with the impression that a search is inevitable,

absent strong countervailing factors, we have consistently found acquiescence rather than consent. *State v. Jepson*, 254 Or App 290, 294-95, 292 P3d 660 (2012). "There is, in ordinary social intercourse, a world of difference between saying 'I'd like to come in,' and 'I'm coming in.'" *State v. Ry/Guinto*, 211 Or App 298, 306, 154 P3d 724 (2007).

In *Jepson*, this court found that the defendant had merely acquiesced to a warrantless search of his home. In that case, police officers learned that the defendant, who had been convicted of a felony eight years earlier, was unlawfully in possession of two firearms. 254 Or App at 292. Two police officers then traveled to the defendant's residence and announced, "We're going to have to take the firearms." *Id*. at 292-93 (brackets omitted). The officers then asked where the guns were located. *Id*. at 293. The defendant responded by providing detailed directions to the weapons' location. *Id*. We reasoned that the officer's first statement "was not a request to obtain consent, but rather, an unconditional statement, which did not invite a response other than acquiescence." *Id*. at 296. We also found that the officers asking about the firearms' location, "in light of the preceding statement, was not a question expressing a desire to seek consent, but an additional statement of the officers' intent to seize the guns." *Id*. Similarly, in *Freund*, we found that an officer's statement "that 'he was there' to pick up the marijuana and 'he wanted' to do it calmly" conveyed to the defendant that "she had no choice whether a search would occur." 102 Or App at 652. In contrast, we have found repeated statements by an officer "either that he would 'like to' or 'wanted to' search" defendant's car to be expressive of the officer's "desire to receive consent to search the vehicle and his understanding that he would not, and could not, search without consent." *Ry/Guinto*, 211 Or App at 305-06 (brackets omitted).

In light of this precedent, we hold that the state has met its burden of proving that the renter's consent to the search was voluntary. Although Brown's statement, "I need to talk to the person that just ran in," was a declaration and not a question or a request, it was not a statement that would, in "ordinary social intercourse," *Ry/Guinto*, 211

Or App at 306, convey to a listener that her only alternative was to permit the officer to enter; the statement would not convey to the listener that "she had no choice whether a search would occur," *Freund*, 102 Or App at 652. Rather, the statement left the person who answered the door with a clear choice: She could have stepped aside and allowed the officer to enter, or she could have left the officer outside and gone to tell defendant that an officer wanted to talk to him. Indeed, the latter would be the more typical response from the host of a crowded social occasion when a police officer expresses a desire to have a conversation with a guest. When she stepped aside and motioned toward defendant, she demonstrated that she chose to let the officer in so that he could approach defendant, instead of choosing to bring defendant to the officer. In other words, she consented to his entry. Thus, the warrantless entry did not constitute a violation of Article I, section 9.

Affirmed.