Argued and submitted October 26, 2015, reversed and remanded March 1, 2017

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**JEREMY DEAN WATTS,**
*Defendant-Appellant.*

Lane County Circuit Court
201307714; A155687

392 P3d 358

Marc D. Brown, Deputy Public Defender, argued the cause for appellant. With him on the opening brief was Peter Gartlan, Chief Defender, Office of Public Defense Services. With him on the reply brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

Shannon T. Reel, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Tookey, Judge, and Wollheim, Senior Judge.

**TOOKEY, J.**

Defendant appeals a judgment of conviction for three counts of being a felon in possession of a firearm, ORS 166.270, assigning error to the trial court's denial of his motion to suppress. Defendant argues that he did not consent to a warrantless search of his residence. We agree with defendant; he did not consent to a search of his residence and, accordingly, we reverse and remand.

We are bound by the trial court's findings of historical fact, provided that they are supported by constitutionally sufficient evidence in the record. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). "Whether those facts establish that the consent was voluntary, however, is a legal issue that we review independently." *State v. Jepson*, 254 Or App 290, 294, 292 P3d 660 (2012). We state the facts consistently with that standard.

On a dark January night, approximately 10 to 12 members of the Lane County Special Response Team (SRT) executed a search warrant on defendant's uncle's residence to retrieve two firearms. The SRT pulled into the driveway in three armored vehicles with their spotlights and sirens on, wearing tactical body armor, and carrying AR-15 style semi-automatic rifles. Using a loudspeaker on one of the armored vehicles, the SRT ordered the occupants to come out of the residence with their hands up. All of the occupants, including defendant, came out of the residence and were taken to the roadway in handcuffs so that they could be detained by local law enforcement officers while the SRT finished securing the property.

As the SRT was securing the property, they came across an outbuilding that defendant used as his separate residence and could hear dogs barking aggressively inside. The SRT asked the officers to find out who owned the dogs because they did not want the dogs to run away or be shot when they entered the residence. Defendant stated that he owned the dogs. Officer Larson asked defendant to go back to his residence and safely let the dogs out, otherwise the SRT would let the dogs out themselves so the SRT could search his residence and secure it. Sergeant Harold escorted defendant to his residence to tie up the dogs. One of the four members

of the SRT at defendant's residence moved defendant's hand-cuffs to the front of his body so he could tie up his dogs.

After defendant tied up his dogs, but before the SRT entered the residence, defendant stated, "have at it, it's all yours." As one of the SRT members was entering defendant's residence, he noticed a long gun leaning up against the wall. Additionally, as the SRT was searching his residence, defendant told the SRT members that there are "three guns in there." After searching defendant's residence, the SRT retrieved a rifle, a handgun, and a shotgun. Detective Glowacki thought that he remembered defendant being on felony probation, so Glowacki contacted dispatch to find out whether defendant was a convicted felon. Dispatch mistakenly advised Glowacki that defendant did not have any felony convictions and the officers returned the firearms to defendant.

The following day, officers learned that defendant was a convicted felon, so they returned to defendant's residence, retrieved the weapons, and issued defendant a citation for being a felon in possession of a firearm. Defendant was subsequently indicted on three counts of being a felon in possession of a firearm.

Prior to trial, defendant moved to suppress all of the evidence derived from the search of his residence. The state argued that the search of defendant's residence was "valid under three theories." Specifically, the state contended that defendant's residence was within the scope of the search warrant for defendant's uncle's residence, the police would have inevitably discovered the firearms, and defendant gave his consent verbally and through his conduct. Defendant asserted that the only residence specified in the warrant was his uncle's and that "the state will not be able to meet its burden in showing that these firearms would have been inevitably discovered had it not been for the illegal[] *** search[.]" Additionally, defendant argued that he did not consent to the search.

The trial court concluded that the search of defendant's residence was beyond the scope of the warrant and turned to the question of whether defendant voluntarily consented to the search. The court stated that, despite the

fact that "there was a dramatic display of weaponry," multiple armored vehicles, and defendant was in handcuffs the entire time, he voluntarily consented to the search of his residence. In denying defendant's motion to suppress, the court concluded that, although defendant was "presented with a difficult choice," defendant was not inappropriately coerced or pressured into giving his consent and the act of opening his residence to remove the dogs and his statement "have at it, it's all yours," were voluntary.[1] Following a bench trial on stipulated facts, defendant was found guilty of all three counts of being a felon in possession of a firearm.

On appeal, the parties do not dispute the trial court's conclusion that defendant's residence was outside of the scope of the search warrant or argue that the inevitable discovery doctrine is applicable. Defendant argues that, under the totality of the circumstances, he did not consent and, even if his conduct and statements amounted to consent, his consent was not voluntary. Additionally, defendant contends that, if he did voluntarily consent to a search, "that consent was a product of the officers exploiting his unlawful arrest." The state asserts that the search was justified by defendant's unprompted consent and, alternatively, that the police found the challenged evidence in plain view during a lawful protective sweep. Furthermore, the state argues that "defendant failed to preserve any claim that his consent was the product of an unlawful arrest." Defendant replies that the state's protective sweep argument was not raised before the trial court and the record is insufficient for us to affirm on that alternative basis.

We conclude that defendant did not consent to the warrantless search of his residence.[2] Under Article I, section 9, of the Oregon Constitution a person's residence is "the quintessential domain protected by the constitutional

---

[1] The court declined to reach the issue of inevitable discovery because it had concluded that defendant voluntarily consented to the search of his residence.

[2] Given our conclusion that defendant did not consent, we do not address defendant's unpreserved exploitation argument. We further decline to address the state's plain view and protective sweep arguments as alternate bases for affirmance given that, had those issues been raised below, a materially different record may have been developed concerning the officers' lawful vantage point and the officers' safety concerns. *Outdoor Media Dimensions Inc. v. State of Oregon,* 331 Or 634, 660, 20 P3d 180 (2001).

guarantee against warrantless searches." *State v. Louis*, 296 Or 57, 60, 672 P2d 708 (1983).[3] A warrantless search of a residence is "*per se* unreasonable" under Article I, section 9, unless the search is done pursuant to "one of the few specifically established and well-delineated exceptions to the warrant requirement." *State v. Davis*, 295 Or 227, 237, 666 P2d 802 (1983) (citations and internal quotation marks omitted). Consent is one of the recognized exceptions to the warrant requirement under Article I, section 9. *State v. Paulson*, 313 Or 346, 351, 833 P2d 1278 (1992). Under the consent exception to the warrant requirement, the state must prove by "a preponderance of the evidence" that, "under the totality of the circumstances, the consent was given by an act of a defendant's free will, as opposed to resulting from express or implied coercion." *Jepson*, 254 Or App at 294. Additionally, for us to determine whether the alleged consent was actually and voluntarily given, "the state must establish with some precision how the law enforcement officers make a request of a defendant[.]" *State v. Musalf*, 280 Or App 142, 152-53, 380 P3d 1087 (2016) (citing *State v. Warner*, 284 Or 147, 161, 585 P2d 681 (1978) ("[A]ppellate courts must know what the state's witnesses contend was actually said, in order for appellate courts to discharge their constitutional function in determining the validity of consent.").

Officer Larson asked defendant to let the dogs out, and the only evidence in the record relating to how Larson made his request to defendant is from defendant's own testimony. Defendant testified that Larson told him "we need you to let your dogs out so we can search your [residence,]" and that Larson gave defendant "the choice of [the police] letting [his] dogs out or [defendant] letting [his] dogs out." Additionally, defendant testified that he removed the dogs because, under the circumstances, he felt that the SRT would enter his residence regardless of whether he consented to the search and possibly harm his dogs in the process.

When an individual "is not given a reasonable opportunity to choose to consent or when he or she is informed that

---

[3] Article I, section 9, provides, in part, that "[n]o law shall violate the right of the people to be secure in their *** houses *** against unreasonable search, or seizure[.]"

a search will occur regardless of whether consent is given," such "acquiescence to police authority does not constitute consent." *Jepson*, 254 Or App at 294-95 (internal quotation marks and citations omitted). "There is, in ordinary social intercourse, a world of difference between saying I'd like to come in, and I'm coming in." *State v. Ry/Guinto*, 211 Or App 298, 306, 154 P3d 724, *rev den*, 343 Or 224 (2007) (internal quotation marks omitted). Larson's imperative statement, "we need you to let your dogs out so we can search your [residence]," is a statement that would, "in ordinary social intercourse," leave a reasonable person with the impression that a search is inevitable. *Id*. In context, Larson's statement only offered defendant "the choice of [the police] letting [his] dogs out or [defendant] letting [his] dogs out" before the search occurred. *See State v. Freund*, 102 Or App 647, 652, 796 P2d 656 (1990) ("[T]he officer's statement told defendant she had no choice whether the search would occur; her only option was whether the search and seizure was to be 'calm and efficient.'").

Moreover, under the totality of the circumstances, Larson's statement cannot reasonably be understood as a request to obtain consent.

> "We *** pay close attention to the words used by an officer who requests consent [because] *** [w]hen those words do not provide the listener with a reasonable opportunity to choose consent, or when those words leave the listener with the impression that a search is inevitable, absent strong countervailing factors, we have consistently found acquiescence rather than consent."

*State v. Briggs*, 257 Or App 738, 742-43, 307 P3d 564, *rev den*, 354 Or 386 (2013); *see also Ry/Guinto*, 211 Or App at 306 n 5 ("[I]n the absence of compelling circumstances to the contrary, an officer's particular choice of language is highly significant in assessing whether a reasonable person would understand the officer's remarks to be so coercive as to render refusal to consent futile.").

Here, because of the absence of "strong countervailing factors," *Briggs*, 257 Or App at 743, we conclude that defendant's removal of his dogs, and his statement "have at it, it's all yours," was mere acquiescence in response to

Larson's statement. Several circumstances contributed to the coercive atmosphere under which defendant acquiesced to Larson's statement, "we need you to let your dogs out so we can search your [residence]." Ten to 12 heavily armed members of the SRT arrived at night in three armored vehicles. They used sirens, spotlights, and a loudspeaker to announce their presence and ordered defendant to come out of his uncle's residence with his hands up. Members of the SRT wore helmets and tactical body armor, and carried AR-15 style semi-automatic rifles throughout the encounter. Defendant was also handcuffed throughout the entire encounter. *See State v. Magana/Rivera*, 265 Or App 416, 422-23, 335 P3d 318 (2014) (to determine whether the defendant's consent was voluntary or the result of coercion, we look at factors such as whether physical force was threatened, whether weapons were displayed, the presence of multiple officers wearing ballistic body armor, and the defendant being ordered to put his hands up as he stepped out of the apartment); *Ry/Guinto*, 211 Or App at 308-09 (in assessing the level of coerciveness, factors include the time of day, whether defendant was in handcuffs, the display of weapons, raised voices, and any threats or promises).

On this record, we conclude that the state failed to prove by a preponderance of the evidence that defendant consented to a warrantless search of his residence. *See State v. Lowe*, 144 Or App 313, 318, 926 P2d 332 (1996) (concluding that the state failed to meet its burden to prove that the defendant consented to take field sobriety tests when the record contained no testimony from the officer concerning how he made the request for the defendant to take field sobriety tests and the defendant testified that he felt that he had no choice but to consent to the search). Thus, the trial court erred when it denied defendant's motion to suppress.

Reversed and remanded.