Argued and submitted December 17, 2020, reversed and remanded
March 17, 2021

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## CHELSEY LEE IRENE TENNANT,
*Defendant-Appellant.*

Lane County Circuit Court
18CR84219; A171065

483 P3d 1226

Defendant appeals judgments of conviction for possession of heroin, ORS 475.854(2)(b), felon in possession of a firearm, ORS 166.270(1), and two counts of felon in possession of a restricted weapon, ORS 166.270(2), which resulted from a search of his bedroom while he was on probation. He argues that the search was unlawful under Article I, section 9, of the Oregon Constitution, because the state did not establish that he consented to the search, but rather, merely acquiesced to the show of authority present. The state responds that the "mere acquiescence" distinction is inapplicable here because it is limited to situations where the defendant is "informed that a search will occur regardless of whether he or she consents or is not given a reasonable opportunity to consent at all." *Held*: The state did not meet its burden in establishing that defendant consented to the search rather than merely acquiescing to the show of authority present. When the state claims "consent" as an exception to the constitutional warrant requirement, it has the burden of proof and persuasion to establish, by a preponderance of the evidence, among other things, that the defendant voluntarily consented to the search, rather than simply acquiesced to authority. The situation must be viewed from the perspective of the defendant, and not the police officer. The state must also show that a defendant on probation was given "a reasonable opportunity" to refuse. On this record, the Court of Appeals could not conclude that the state carried its burden to establish that defendant consented to the search.

Reversed and remanded.

Charles D. Carlson, Judge.

Francis C. Gieringer, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Joanna Hershey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

JAMES, J.

Reversed and remanded.

**JAMES, J.**

Defendant was on probation in Lane County when two parole and probation officers entered his home, not for him, but to contact Harrelson, defendant's girlfriend, whom the officers believed to be at least temporarily at defendant's house. Once inside, after learning that defendant too was on probation, one officer requested to enter defendant's bedroom and conduct a search. That search revealed evidence that led to defendant's conviction for possession of heroin (ORS 475.854(2)(b)), felon in possession of a firearm (ORS 166.270(1)), and two counts of felon in possession of a restricted weapon (ORS 166.270(2)). Defendant appeals that judgment of conviction, arguing that the search of his bedroom was unlawful under Article I, section 9, of the Oregon Constitution, because the state did not establish that he consented to the search, rather than merely acquiesced to the show of authority present. We agree with defendant and accordingly reverse and remand.

We "review the trial court's denial of defendant's motion to suppress for errors of law." *State v. Craig*, 284 Or App 786, 787, 395 P3d 634 (2017). "In doing so, we are bound by the trial court's findings of historical fact as long as there is constitutionally sufficient evidence to support them." *State v. Middleton*, 302 Or App 339, 341, 459 P3d 918 (2020). "If the trial court does not make findings on all the material facts and there is evidence from which such facts could be decided in more than one way, we will presume that the facts were decided in a manner consistent with the trial court's ultimate findings." *State v. Regnier*, 229 Or App 525, 527, 212 P3d 1269 (2009). We state the facts, which are not in dispute by the parties, in accord with that standard.

In December 2018, Lane County Probation Officers Biel and Barton came to defendant's home to contact Harrelson, whom Barton supervised. Neither officer supervised defendant. Biel carried a firearm and wore "an agency-issued polo that has a badge on it" and an "outer external carrier" that identified him as a parole officer.

Barton knocked on the front door. Harrelson opened a peephole and then closed it. Barton announced that they

were parole and probation officers. Harrelson opened the door and invited the probation officers inside.

Both defendant and Harrelson stood in the living room as the officers entered. As Barton spoke with Harrelson, Biel spoke with defendant and determined that defendant was on probation, but Biel did not know why. Biel testified about his understanding of general probation conditions:

> "[PROSECUTOR]:  Okay. Officer Biel, are you aware that a condition of probation is to permit a parole and probation officer to visit the probationer at the probationer's work site or residence and to conduct walk throughs of the common areas and of the rooms of the residence occupied by or under the control of the probationer?

> "[BIEL]:  Yes, I am.

> "[PROSECUTOR]:  Are you also aware that one of the conditions of probation is to consent to the search of a person's vehicle or premises upon the request of a representative of the supervising officer if the supervising officer has reasonable grounds to believe the evidence of a violation will be found?

> "[BIEL]:  Yes, I am."

At some point, defendant started walking towards a bedroom. Biel "follow[ed] the defendant and asked if [he] could also come into the room." Biel testified that, after learning that defendant was on supervision, he "wasn't going to let the defendant out of [his] eyesight." While Biel was in the bedroom, Barton informed him that she had found "some bullets." As Biel testified:

> "[BIEL]:  At that point, I asked the defendant for consent to search for a firearm.

> "[PROSECUTOR]:  Okay. And what did the—what did the defendant respond to you when you asked to search?

> "[BIEL]:  That I could, that I could search the residence.

> "[PROSECUTOR]:  Okay. And was there anything he said that you are not allowed to search? Or is it an open ended? How was it phrased?

"[BIEL]: It was open. I don't remember the exact answer but at no time did they say that I could not search."

Biel's search discovered firearms and ammunition, a billy club, a stun gun Taser, some fake currency, a butterfly style knife, and then other miscellaneous items like BB pellet guns and drug paraphernalia like foil and a tar-like substance that Biel presumed was heroin.

At trial, defendant moved to suppress the evidence found in the search arguing, in part, that his consent was mere acquiescence. The state responded that the "mere acquiescence" distinction was inapplicable here, arguing that it was limited to situations where the defendant is explicitly "informed that a search will occur regardless of whether he or she consents or is not given a reasonable opportunity to consent at all." The trial court denied defendant's motion to suppress and a stipulated facts trial followed, resulting in defendant's conviction.

Defendant appeals, and the parties largely renew their arguments from trial. Although the parties each focus initially on the various statutory basis for probation supervision, they both ultimately coalesce around the dispositive issue in this case—whether defendant consented. Defendant argues he did not consent but merely acquiescenced to authority. The state responds that "the record does not show any implied threat that, if defendant refused to allow Officer Biel to enter his bedroom or search *** he would face negative consequences." The case so framed, we turn to the merits.

At the outset, it is important to clarify what is not at issue in this case. First, the state does not assert—correctly so—that the search conducted here was permitted under the general conditions of probation that permit home visits. As we said in *State v. Guzman*, "the authority to conduct a home visit under the conditions of probation does not encompass the authority to conduct a search." 164 Or App 90, 96, 990 P2d 370 (1999), *rev den*, 331 Or 191 (2000). Second, the state does not contend—again, properly so—that defendant was required to consent to a search by virtue of his probationary status. In *State v. Hindman*, we held that a probation condition requiring submission to a request to search a residence

"was an agreement to consent to a search and not a prospective consent." 125 Or App 434, 439, 866 P2d 481 (1993). As we explained in *State v. Davis*, general conditions of probation do not constitute a "waiver of the probationer's Article I, section 9, rights, the probationer is entitled to refuse to allow the search, *and must be given a reasonable opportunity to do so*." 133 Or App 467, 474, 891 P2d 1373, *rev den*, 321 Or 429 (1995) (emphasis added). The issue in this case is therefore one of common variety consent. Finally, the state does not claim that Harrelson consented to a search of the residence, or even had the authority to consent. As such, the focus is entirely on the validity of defendant's consent.

A warrantless search violates Article I, section 9, unless it is justified by an exception to the warrant requirement; consent is such an exception. *State v. McMilian,* 191 Or App 62, 67, 80 P3d 538 (2003), *rev den*, 337 Or 248 (2004). When the state claims "consent" as an exception to the constitutional warrant requirement, the state has the burden of proof and persuasion to establish, by a preponderance of the evidence, four things: (1) that a person with the authority to do so, (2) voluntarily consented to the search, rather than simply acquiesced to authority.[1] Then, the state must establish (3) the scope of consent given, and finally, (4) that the search conducted did not exceed the scope of the consent given. For the purposes of our disposition here, only the second of those is at issue.

To establish consent, the state first must establish that defendant's "consent" was, in fact, consent, and "not mere acquiescence to a thinly veiled demand." *State v. Brock*, 254 Or App 273, 278-79, 295 P3d 89 (2012). A defendant's "mere acquiescence" to police authority does not constitute consent. *State v. Berg*, 223 Or App 387, 392, 196 P3d 547 (2008), *adh'd to as modified on recons*, 228 Or App 754, 208 P3d 1006, *rev den*, 346 Or 361 (2009). "[A]cquiescence occurs when an individual is not given a reasonable opportunity to choose to consent" or when circumstances or words make clear that "a search will occur regardless of whether

---

[1] Our decisions in this area sometimes treat acquiescence as distinct from voluntariness, and other times as a form of, or subset of, involuntary consent. Whether it is best viewed as a different element or not, it may be useful for courts and practitioners to approach the issue with some conceptual separation.

consent is given." *Id*. In determining whether a particular police-citizen interaction amounts to consent, versus mere acquiescence, we look to the totality of the circumstances present during the encounter. *State v. Jepson*, 254 Or App 290, 294, 292 P3d 660 (2012).

The language used by the officer requesting consent is particularly relevant to the totality of circumstances. *State v. Briggs*, 257 Or App 738, 742, 307 P3d 564, *rev den*, 354 Or 386 (2013). However, language is not dispositive. We place the language in a broader context of a totality of circumstances. As we have noted in the related context of a seizure under Article I, section 9, inquiries "framed as a question" may nevertheless be "confrontational in the context of [the] interaction." *State v. Leiby*, 293 Or App 293, 298, 427 P3d 1141 (2018). "[A] rising tone, or a question mark at the end of a sentence, is not a talisman that automatically transmutes a police-citizen interaction into a 'mere encounter.'" *Id*. So, too, the language requesting consent to search, even when politely phrased, does not automatically make the response consent, as opposed to acquiescence.

Importantly, in assessing consent versus mere acquiescence, we view the situation from the perspective of the person being asked for consent, not the police officer asking. As we held in *Briggs*, "[w]hen those words do not provide the listener with a reasonable opportunity to choose to consent, or when those words leave the listener with the impression that a search is inevitable, absent strong countervailing factors, we have consistently found acquiescence rather than consent." 257 Or App at 742-43. The impression that a search is inevitable can come from what is said, the manner in which it is said, the situational context of the encounter, as well as what is left unsaid. *See, e.g.*, *Jepson*, 254 Or App at 296 ("[the officer's] statement that 'we're going to have to take the firearms,' *** was not a request to obtain consent, but rather, an unconditional statement, which did not invite a response other than acquiescence"); *State v. Freund*, 102 Or App 647, 652, 796 P2d 656 (1990) (officer's statement "that 'he was there' to pick up the marijuana and 'he wanted' to do it calmly" was unconditional and communicated to the defendant that she had "no choice whether a search would occur"); *Briggs*, 257 Or App at 743-44 (holding that the state

met its burden of proving that consent was voluntary where, despite the officer's declaratory statement—"I need to talk to the person that just ran in"—the officer's words did not convey to the listener that she had no choice as to whether a search would occur).

Finally, in the context of a request for consent by a probationer, we have held that, to meet its burden, the state must show that the probationer was given "a reasonable opportunity" to refuse. *Davis*, 133 Or App at 474. Although we have never held it to be explicitly required, in assessing whether the state has met that burden, we have given considerable weight to whether the officer "correctly informed defendant that he could refuse to consent to a search, while noting that such a refusal could subject him to arrest for a probation violation." *State v. Hiner*, 240 Or App 175, 182, 246 P3d 35 (2010).

Here, on this record, we cannot conclude that the state carried its burden to establish that defendant consented to the search. Warrantless searches are *per se* unreasonable and presumptively unlawful. *State v. Baker*, 350 Or 641, 647, 260 P3d 476 (2011). Any claimed exception to the warrant requirement—including consent—requires proof by the state as to each element necessary to establish the exception. *See State v. Bonilla*, 358 Or 475, 480-81, 366 P3d 331 (2015) (discussing consent exception to the warrant requirement). On appeal, the state argues, in part, that "the record does not demonstrate that [defendant's] consent was the product of implied coercion or 'mere acquiescence' to police authority." That argument misstates the burden. It assumes consent, unless mere acquiescence is shown. But it is not defendant's burden to prove acquiescence; it is the state's burden to prove affirmatively that defendant consented rather than merely acquiesced.

Here, the state offered little other than defendant's agreement to Biel's request, and the fact that Biel never pointed his firearm at defendant. More is required for the state to satisfy its burden. We must view the situation from the perspective of the listener, *i.e.*, defendant. *See Briggs*, 257 Or App at 742-43. Defendant was presented with two parole and probation officers who, upon entering his home,

immediately began questioning both himself and his girlfriend. They also immediately observed drug paraphernalia. Defendant was on probation, and there is no dispute on this record that he believed his consent to search was a condition of that probation. As the prosecutor elicited from defendant:

"[PROSECUTOR]: [Defendant], when you were placed on probation, you were—you were told the conditions of your probation; is that correct?

"[DEFENDANT]: Correct.

"[PROSECUTOR]: And you understood those conditions?

"[DEFENDANT]: Mm-hmm.

"[PROSECUTOR]: You understood one of them is to consent to searches?

"[DEFENDANT]: If—by who? By my parole officer, yeah."

Correspondingly, the record shows that Biel both knew that defendant was on probation and also was operating under the mistaken belief that defendant's probationary status required him to consent to a search, rather than just make his refusal to consent grounds for a probation violation.

Biel testified that, as defendant left the living room, Biel "followed" him. By Biel's own testimony, his request to enter defendant's room was formality. Biel testified that he was not going to let "defendant out of [his] eyesight." In furtherance of that objective, the record shows that Biel was not going to allow defendant to enter his bedroom without Biel also entering the bedroom.

The state presented little testimony concerning Barton's interaction with Harrelson that was occurring simultaneously to Biel's interaction with defendant. The officers had come to the house for Harrelson, who Barton proceeded to interrogate in the living room, in view of contraband. The record shows, however, that Barton informed Biel that he had uncovered some bullets from his interaction with Harrelson.

Finally, the state offered no testimony that Biel ever informed defendant that he could refuse consent or limit the scope of consent. Ultimately it is the state's burden, not defendant's, to establish that the officer's words and conduct did not create "the impression that a search is inevitable." *State v. Watts*, 284 Or App 146, 151, 392 P3d 358 (2017). This record falls short of that standard.

Reversed and remanded.