***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Submitted September 27, affirmed October 19, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

WILLIAM DAVID MILLER,
*Defendant-Appellant.*

Deschutes County Circuit Court
18CR33138; A174409

Beth M. Bagley, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Sarah De La Cruz, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General, filed the brief for respondent.

Before James, Presiding Judge, and Aoyagi, Judge, and Joyce, Judge.

JAMES, P. J.

Affirmed.

**JAMES, P. J.**

Defendant appeals from a judgment of conviction for one count of driving while under the influence of intoxicants (DUII), ORS 813.010, assigning error to the trial court's denial of his motion to suppress evidence resulting from the warrantless administration of field sobriety tests. Defendant argues that he did not voluntarily consent to perform the field sobriety tests. We conclude that defendant's consent to the field sobriety tests was voluntary and affirm.[1]

We review a trial court's decision to deny a defendant's motion to suppress for legal error. *State v. Vasquez-Villagomez*, 346 Or 12, 23, 203 P3d 193 (2009). In reviewing the voluntariness of defendant's consent, we are bound by the trial court's findings of historical fact if there is evidence in the record to support them. *State v. Venturi*, 166 Or App 46, 50, 998 P2d 748, *rev den*, 330 Or 375 (2000). "Ultimately, the determination about whether a consent to search is voluntary is a legal issue that we review independently, based on the trial court's findings that are supported by the evidence." *Id.* (citing *State v. Stevens*, 311 Or 119, 135, 806 P2d 92 (1991)).

The essential facts are undisputed. At around 11:15 p.m., Trooper Topinka observed defendant driving his vehicle westbound on Highway 20, crossing over the fog line multiple times. At one point, Topinka observed defendant nearly collide with the guardrail while crossing the fog line. Topinka pulled defendant over, explaining to defendant that he stopped him due to his failure to stay in the traffic lane. Speaking to defendant through the vehicle's driver-side window, Topinka asked if defendant was looking at his phone and if he was okay. At that time, Topinka smelled an overwhelming odor of alcohol coming from either the vehicle or defendant and observed that defendant's eyes were bloodshot and watery.

Next, Topinka asked defendant whether he knew where he was going, to which defendant replied that he was driving to Sisters and trying to go to Camp Sherman.

---

[1] Defendant raises alternative arguments, but our resolution on the issue of consent obviates the need to address them.

Topinka asked defendant if he was on any medications and how much he had to drink that day, to which defendant answered "no" and "a couple beers," respectively. Topinka asked defendant how long ago he drank the beers and defendant responded, "a little bit ago." After running defendant's license, Topinka returned to the vehicle and said he was concerned about defendant's driving and asked whether he would "be willing to step out and perform some voluntary field sobriety tests." During the encounter, the dashboard camera on Topinka's patrol vehicle recorded the conversation that transpired as follows:[2]

"[TOPINKA]:   Okay. So, I'm really concerned about your driving. Okay. Do you want to stop [*sic*] out and perform some voluntary field sobriety tests?

"[DEFENDANT]:   Yes, and no. Do I want to do it?

"[TOPINKA]:   It's up to you. It's voluntary. That's why I even say it's voluntary.

"[DEFENDANT]:   What happens if I don't volunteer?

"[TOPINKA]:   Well, it's—then we go down a different road.

"[DEFENDANT]:   And then—

"[TOPINKA]:   So—

"[DEFENDANT]:   What road is that?

"[TOPINKA]:   Well, either you go one way or the other first before we get to that point.

"[DEFENDANT]:   I will volunteer."

After the conversation, defendant stepped out of the vehicle and completed the field sobriety tests. Topinka then read defendant his *Miranda* rights and placed him under arrest for DUII.

---

[2] Topinka's testimony at the suppression hearing and the video reflect some discrepancies in conversation wording. Neither party has argued that the discrepancies affected the trial court's ruling and we reach the same conclusion using either recitation.

Before trial, defendant moved to suppress "any and all evidence gleaned from the unlawful stop, search, seizure, arrest and interrogation," arguing that he did not give valid, voluntary consent to the field sobriety tests. Defendant did not testify at the suppression hearing, and the trial court found Topinka's testimony to be credible. The trial court denied defendant's motion to suppress based on Topinka's testimony, determining that defendant's words and physical conduct, taken in conjunction with Topinka's words and physical conduct, indicated he had voluntarily consented to the field sobriety tests. Subsequently, a jury convicted defendant of DUII.

Warrantless searches are unreasonable under Article I, section 9, unless they fall "within one of the few specifically established and well-delineated exceptions to the warrant requirement." *State v. Baker*, 350 Or 641, 647, 260 P3d 476 (2011) (internal quotation marks omitted). Consent is one of those exceptions. *State v. Paulson*, 313 Or 346, 351, 833 P2d 1278 (1992). Under the consent exception, the burden rests with the state to prove, by a preponderance of the evidence, "four things: (1) that a person with the authority to do so, (2) voluntarily consented to the search, rather than simply acquiesced to authority. Then, the state must establish (3) the scope of consent given, and finally, (4) that the search conducted did not exceed the scope of the consent given." *State v. Tennant*, 310 Or App 70, 75, 483 P3d 1226 (2021) (footnote omitted).

The issue in this case focuses on the second prong: voluntariness. "The test for voluntariness is whether, under the totality of the circumstances, the consent was given by an act of defendant's free will, as opposed to resulting from express or implied coercion." *State v. Jepson*, 254 Or App 290, 294, 292 P3d 660 (2012). Consent "may be manifested by conduct" or may be explicit. *See State v. Martin*, 222 Or App 138, 142, 193 P3d 993 (2008), *rev den*, 345 Or 690 (2009). Moreover, it is necessary that the defendant "*actually* intends to give consent to the intrusion." *State v. Blair*, 361 Or 527, 535, 396 P3d 908 (2017) (emphasis in original). "[A] defendant's mere acquiescence to police authority does not constitute consent." *Jepson*, 254 Or App at 294 (internal

quotation marks omitted). When the defendant "is not given reasonable opportunity to choose to consent or when he or she is informed that a search will occur regardless of whether consent is given," the defendant has acquiesced to police authority. *Id*. at 294-95.

"In assessing whether defendant has voluntarily consented or merely acquiesced to police authority, we consider the officer's words to determine whether those words provided the defendant with an opportunity to choose to consent, or whether those words left defendant with the impression that a search was inevitable." *State v. Jordan*, 308 Or App 547, 553, 481 P3d 1017 (2021) (citing *Jepson*, 254 Or App at 295-96, and *State v. Freund*, 102 Or App 647, 652, 796 P2d 656 (1990)). If the officer frames the request for consent as a question, we consider whether the wording of the question provided the defendant with an opportunity to choose to consent. If the officer's verbal phrasing is not in the form of a question, we consider whether it nevertheless expresses desire to receive consent and an understanding that the officer cannot search without consent. If it does, that can indicate the defendant was afforded an opportunity to choose to consent. *See State v. Ry*, 211 Or App 298, 306, 154 P3d 724, *rev den*, 343 Or 224 (2007).

A defendant's response to an officer's search request can help indicate whether the consent was voluntary. *See Jordan*, 308 Or App at 556 (concluding that the defendant attempted to limit the officer's search and expressed frustration with the officer's requests for consent). Additionally, a defendant's knowledge of the right to refuse to consent is one factor that may be considered in the analysis. *State v. Maddux*, 144 Or App 34, 39, 925 P2d 124 (1996) (concluding that an officer's failure to inform the defendant of the consequences of refusing field sobriety tests should not weigh against a voluntariness conclusion). The relevant considerations when determining whether consent was voluntary can include, but are not limited to, "whether physical force was used or threatened, whether weapons were displayed, whether the consent was obtained in public, the officer's tone of voice, whether the person giving consent is under

investigation, the number of officers present, and 'whether the atmosphere surrounding the consent is antagonistic or oppressive.'" *Jordan*, 308 Or App at 553 (citing *State v. Larson*, 141 Or App 186, 197-98, 917 P2d 519, *rev den*, 324 Or 229 (1996)).

Here, in assessing the totality of the circumstances, we conclude that the state met its burden to establish that defendant's consent was freely and voluntarily given. When Topinka asked, "Would you be willing to step out and perform some field sobriety tests?" his choice of words invited a "yes" or "no" response, indicating a choice. Further, when Topinka said, "It's up to you. It's voluntary. That's even why I say it's voluntary," the phrasing of those statements expressed desire to receive consent from defendant and that Topinka would not administer the tests in the absence of defendant's consent. Those statements together gave defendant the choice of whether to consent or refuse, rather than indicating that a search was inevitable.

Defendant argues that he never had the full opportunity to refuse because Topinka never told him that he had the option, and because Topinka did not inform defendant of the consequences of refusal. The crux of defendant's argument focuses on Topinka's phrase "different roads." Defendant argues that that phrase was, at best, confusing, and at worst, implied a negative experience if defendant refused. We do not agree. Although Topinka did not tell defendant verbatim that he had the option to refuse, that is not required. Topinka's words gave defendant the opportunity to make a choice, and that is sufficient. Topinka's discussion about different "roads," albeit potentially confusing, was not implicitly coercive.

Finally, defendant's ultimate response to Topinka's questions also indicated that he consented—"I'll volunteer"— unequivocally. Defendant then stepped out of the car— conduct indicating his consent. There is no evidence that Topinka's tone of voice was coercive, or the encounter domineering. Topinka neither used nor threatened physical force, he did not display a weapon, and by all accounts the encounter was cordial and nonoppressive.

In the totality of the circumstances, the state established that defendant voluntarily consented to the field sobriety tests. Accordingly, the trial court did not err in denying defendant's motion to suppress.

Affirmed.