858 February 12, 2025 No. 111

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ERIK MENDOZA-ROSILLO,
Defendant-Appellant.

Marion County Circuit Court
21CR57073; A180046

Sean E. Armstrong, Judge.

Argued and submitted December 30, 2024.

Nora Coon, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Christopher Perdue, Assistant Attorney General, argued the cause for respondent. Also on the brief was Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Kamins, Judge, and Kistler, Senior Judge.

PER CURIAM

Affirmed.

**PER CURIAM**

Defendant appeals a judgment of conviction for one count of unlawful possession of a short-barreled shotgun, ORS 166.272, entered after a conditional guilty plea. Defendant asserts that the trial court erred when it denied his motion to suppress.[1] We affirm.

The trial court determined that the search that led to the discovery of the shotgun was lawful because defendant's mother, who lived in the house where the shotgun was found, consented to the search.[2] Defendant contends that that was error, because "[t]he state failed to establish that [defendant's mother]'s verbal 'consent' to the police entry into the house was voluntary consent rather than mere acquiescence to [Officer] Shipley's original warning that the police were 'going to be entering' and 'would force entry into the residence' if no one answered the door."[3] *State v. Tennant*, 310 Or App 70, 75, 483 P3d 1226 (2021) ("To establish consent, the state first must establish that defendant's 'consent' was, in fact, consent, and 'not mere acquiescence to a thinly veiled demand.'"). The state responds that "[d]efendant's mother voluntarily consented to the entry and to the search of the residence for injured persons."

Reviewing "the facts on which the denial was based for any evidence, and the trial court's ruling based on those facts for legal error," *State v. Stanley*, 287 Or App 399, 401,

---

[1] Defendant also asserted on appeal that the trial court erred when it imposed certain special conditions of probation. At oral argument, however, defendant informed us that he has been discharged from probation, and that that issue is now moot. Because it is moot, we do not consider it.

[2] The trial court also determined that the emergency aid exception to the warrant requirement applied, and defendant, on appeal, also challenges that determination. In light of our conclusion that the trial court did not err in determining that defendant's mother consented to the search, we need not reach that issue.

[3] At oral argument, defendant also asserted that, even if defendant's mother consented to the search, the motion to suppress should have been granted because the search exceeded the "scope of consent." That argument, however, was not raised in defendant's briefing nor was it preserved in the trial court. Thus, we do not reach it. *See Colton and Colton*, 297 Or App 532, 547-48, 443 P3d 1160 (2019) ("We do not consider appellate arguments—even if properly preserved—that are made on appeal for the first time during oral argument."); *see also State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000) ("Generally, an issue not preserved in the trial court will not be considered on appeal.").

404 P3d 1100 (2017), we conclude that the trial court did not err.

At the outset, as explained below, we understand the trial court to have found that defendant's mother did not speak English, or at least much English, so her consent to the search was not in response to Shipley's statement that "police were 'going to be entering' and 'would force entry into the residence' if no one answered the door," but in response to her conversation with Officer Velazquez. The trial court's finding about mother's English-language ability was supported by evidence in the record—*e.g.*, that she was speaking in Spanish on the night of the incident and had "good rapport" with a Spanish speaking officer, Velazquez, in part because he "could communicate in her primary language of Spanish."

Although defendant contends that the trial court's statement that "there's no evidence in the record that [defendant's mother] spoke English" erroneously "put the burden on defendant, rather than the state" to prove whether defendant's mother spoke English, we disagree with that understanding of the trial court's ruling. Instead, we understand the trial court's observation concerning the absence of evidence in the record that defendant's mother spoke English to be an explanation of its legal conclusion regarding defendant's mother's consent and, in particular, a remark made in response to defendant's argument in the trial court that "there's no evidence that [defendant's mother] only speaks Spanish."

Given that factual finding, and based on the totality of circumstances, we conclude that the trial court did not err in determining that defendant's mother consented to the search and did not merely acquiesce. *Tennant*, 310 Or App at 76 ("In determining whether a particular police-citizen interaction amounts to consent, versus mere acquiescence, we look to the totality of the circumstances present during the encounter."). In reaching that conclusion, we note Velazquez's testimony reflecting that, after defendant's mother came to the door, his interactions with her were in Spanish; that Velazquez asked defendant's mother whether "anyone was injured inside" and she said she did not know;

that Velazquez then requested consent "to go and see if anyone was injured inside the residence," and she gave consent to the search without "any hesitation"; and that while officers were inside of the home, Velazquez stayed in the doorway with defendant's mother while she asked questions about "making sure that everyone was okay," "who was where," "where the children were, where her dad was, and stuff like that." Indeed, according to Velazquez's testimony, defendant's mother was "giving [him] directions at that point," and was not merely acquiescing.

Affirmed.