Argued and submitted December 21, 2016, reversed and remanded
August 23, 2017

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SHAWN GALEN STANLEY,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR1412315; A158936

404 P3d 1100

Emily P. Seltzer, Deputy Public Defender, argued the cause for appellant. With her on the brief was Ernest G. Lannet, Chief Defender, Office of Public Defense Services.

Lauren P. Robertson, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeVore, Presiding Judge, and Garrett, Judge, and James, Judge.*

---

* James, J., *vice* Duncan, J. pro tempore.

## GARRETT, J.

Defendant was convicted after a bench trial of harassment, ORS 166.065, and interference with making a report, ORS 165.572. He appeals the denial of his motion to suppress evidence obtained after police entered his home without a warrant. We conclude that the warrantless entry into defendant's home was not justified by the emergency aid exception to the warrant requirement. We also reject the state's alternative argument that defendant consented to the entry. Accordingly, we conclude that the trial court erred in denying defendant's motion to suppress, and reverse and remand the judgment.

In reviewing the denial of a motion to suppress evidence, we review the facts on which the denial was based for any evidence, and the trial court's ruling based on those facts for legal error. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993); *see also State v. Freund*, 102 Or App 647, 651, 796 P2d 656 (1990) ("We are not bound by the trial court's conclusions, if the historical facts do not meet the constitutional standards for a valid consent to search."). Where findings of fact are not made on all issues and there is evidence from which such facts could be decided more than one way, we presume that the facts were decided in a manner consistent with the trial court's ultimate conclusion. *Ehly*, 317 Or at 75. We state the facts in accordance with that standard.

The state's evidence at the hearing on the motion to suppress consisted of the testimony of Officers Burnum and Hill, who responded to a 9-1-1 call from the victim, defendant's then-girlfriend, reporting a domestic disturbance. The officers testified that they were informed by dispatch that the victim had been attacked by defendant; that at one point, defendant had taken her phone to prevent her from calling 9-1-1; that defendant had broken down the door to a bathroom to "get at her"; and that there was a gun in a safe somewhere inside the home. The officers were also told that the victim was upstairs and "felt safe" there, and that defendant was outside waiting for police to arrive.

Burnum, Hill, and a third officer arrived and found defendant sitting on the front porch of the house. Both

Burnum and Hill testified that defendant was calm and compliant and that the encounter was "casual." The officers determined that the house belonged to defendant and that the victim was inside with her dog. Hill then told defendant, "I'm going to go in and check on [the victim]." Defendant said something like, "Go on ahead. She's inside." Neither officer recalled asking for defendant's consent to enter the house, but Hill believed that defendant had consented to the entry through his reply. When questioned at the suppression hearing regarding the basis for entering without a warrant, Burnum testified that the entry was necessary "to investigate if there was a crime, in fact, that happened," to see "if anybody was injured inside," and because, under the circumstances, there was "a person [who] was potentially injured." Additionally, Hill testified that it was her understanding that, pursuant to the community caretaker function, police are "mandated" to enter the home in domestic violence situations whenever "there may be somebody injured or hurt inside" to ensure the safety of the individual. Thus, according to Hill, a warrantless entry into defendant's home was necessary "to make sure that [the victim] was okay."

Hill and the other officer entered the house to locate the victim, while Burnum continued interviewing defendant. The victim showed the officers the damaged door to the upstairs bathroom. She was upset and her right ear and side of her face were red. While inside, the officers also took photos of the bathroom door and of the victim's injuries, which were later admitted into evidence at trial. Defendant was subsequently charged with one count each of harassment and interference with making a police report.

Before trial, defendant moved to suppress all evidence obtained after the officers entered his home on the ground that the warrantless entry violated Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution.[1] Defendant argued that the

---

[1] Article I, section 9, provides, in part, that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure." Similarly, the Fourth Amendment to the United States Constitution provides, in part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

warrantless entry was not justified by any exception to the warrant requirement and that he did not consent to the entry, but had merely acquiesced to Hill's declaration that she intended to enter the home. The state responded that the entry was justified under the emergency aid exception, or, alternatively, that defendant had consented. The trial court agreed with the state:

> "I am going to deny the motion to suppress the going into the house for several different reasons: one, the information that the police officers had was a victim had been attacked, felt safer upstairs, had the phone taken away, there was a gun somewhere in the house, maybe it was upstairs, whatever, and under the circumstances, I believe that they had the right to go in and assist * * * a person who had allegedly been attacked; secondarily, you know, his gesture to go ahead smacks to me of permission. When they indicated that, you know, they wanted to do that, certainly if he didn't want them to do it, he could have said so[.]

> "* * * * *

> "* * * And so I think under the community caretaking exception, this clearly was allowable for them to come in."[2]

Following a bench trial, the court convicted defendant on both counts. At sentencing, the court imposed a single $500 fine and a $60 "Unitary Assessment" on each count as part of defendant's sentence.

On appeal, defendant raises two assignments of error. In his first assignment, defendant contends that the trial court erred when it denied his motion to suppress because neither reason cited by the court justified the warrantless entry into defendant's home. Specifically, defendant argues that the emergency aid exception is unavailing

---

[2] Although the trial court stated that the warrantless entry was permissible under the "community caretaking exception," it is apparent from the parties' arguments below that the issue was whether the entry was permissible under the emergency aid exception to the warrant requirement. *See State v. Martin*, 222 Or App 138, 146, 193 P3d 993 (2008), *rev den*, 345 Or 690 (2009) (holding that, in order for a warrantless community-caretaking search of a home to be lawful, the search must also fall under one of the constitutional exceptions to the warrant requirement).

because officers lacked a subjective belief, or objectively reasonable grounds for a belief, that the victim had suffered a "serious physical injury or harm" requiring immediate assistance. Defendant further argues that he did not consent to the warrantless entry because the officer's statement—"I'm going to go in and check on [the victim]"—was not a request for consent and did not give defendant an opportunity to deny officers entry into the home. In his second assignment of error, defendant argues that the trial court plainly erred by imposing the $60 "Unitary Assessment" fees because the statute authorizing such assessments, *former* ORS 137.290 (2009), was repealed before sentencing in this case. Or Laws 2011, ch 597, § 118.

We begin with defendant's arguments regarding the emergency aid exception. Under Article I, section 9, warrantless entries and searches are *per se* unreasonable unless they fall within one of the few well-delineated exceptions to the warrant requirement. *State v. Baker*, 350 Or 641, 647, 260 P3d 476 (2011) (citing *State v. Davis*, 295 Or 227, 237, 666 P2d 802 (1983)). One such exception is the emergency aid exception, which applies "when police officers have an objectively reasonable belief, based on articulable facts, that a warrantless entry is necessary to either render immediate aid to persons, or to assist persons who have suffered, or who are imminently threatened with suffering, serious physical injury or harm." *Baker*, 350 Or at 649 (footnotes omitted). Stated another way, in order for the emergency aid exception to apply, the state must prove that, at the time of the warrantless entry, the officers held a subjective belief that there was an immediate need to assist a person who has suffered (or is imminently threatened with suffering) "serious physical injury or harm," and that that belief was objectively reasonable. *State v. Hamilton*, 285 Or App 315, 321, 397 P3d 61 (2017); *State v. McCullough*, 264 Or App 496, 502-03, 336 P3d 6 (2014).

In this case, it is unnecessary to address whether objectively reasonable grounds existed for the officers to believe that the victim had suffered serious physical injury because we conclude that there is no evidence in the record that the officers *subjectively* held such a belief. The record

of the motion-to-suppress hearing reveals that neither Burnum nor Hill testified to having an actual belief that the victim was seriously injured and in need of immediate assistance. Burnum testified only that she needed to see "*if* there was a crime, in fact, that happened," "*if* anybody was injured inside," and that the victim was "a person [who] was *potentially* injured." (Emphases added.) Similarly, Hill testified to her knowledge that there had been a "domestic situation" and that defendant had "attacked" the victim and taken her phone, and that, under the community caretaking exception, a warrantless entry was required "to *make sure* that [the victim] was okay." (Emphasis added.)

That testimony establishes that the officers were, instead, acting out of a concern to find out *whether* the victim was injured, and a belief that they were required to do so in situations involving reported domestic violence. Our recent case law makes clear, however, that the emergency aid exception requires more than a speculative concern that someone may need assistance; rather, police must actually have a subjective belief that a person *is* seriously injured and in need of immediate assistance. *See, e.g., Hamilton*, 285 Or App at 322 (explaining that "[t]he subjective belief required for the emergency aid exception to apply is the belief that a search is necessary because there is 'an immediate need to aid or assist a person who has suffered * * * serious physical injury or harm,' not the belief that a search is necessary *to discover if* there is an immediate need to aid or assist a seriously injured person") (emphasis in original). "A speculative belief that someone *might* require aid does not justify a warrantless search under the emergency aid exception." *Id.* at 323 (emphasis added).

Here, the state argues that the officers' knowledge that defendant and the victim had had a physical altercation, in addition to their knowledge that defendant had at least momentarily taken the victim's phone and that there was a gun in the house, was sufficient to support an inference that a "physical act of violence" had occurred that "could have escalated" into something more serious. According to the state, the officers' belief that emergency aid was required could have been based on that inference.

We agree that an officer's subjective belief that emergency aid is required may be based on reasonable inference from other facts. The problem here, however, is not the state's reliance on inference; it is that the record does not reflect that either Burnum or Hill ever formed the requisite subjective belief that the victim *had* suffered a serious physical injury or harm requiring immediate aid. According to their own testimony, the officers did not have a belief one way or another as to whether the victim was injured or in need of immediate assistance; Hill entered the home to find out. Without an actual, subjective belief that the victim needed their immediate assistance, and without any evidence that defendant continued to pose a threat to the victim's safety, the officers could not act under the emergency aid exception. *See McCullough*, 264 Or App at 504 (officer's testimony that his intention in entering the trailer was "to make sure that defendant was okay and to check on his well-being" based on the officer's belief that the defendant had been injured in a car crash, though revealing "well-founded speculation that perhaps not all was well with defendant," fell short of a subjective belief that intervention was necessary to protect the defendant from the effects of serious physical injury or harm).

We turn to whether defendant consented to the warrantless entry into his home. When relying on the consent exception to the warrant requirement, the state must prove by a preponderance of the evidence that someone having the authority to do so voluntarily consented to the entry. *State v. Jepson*, 254 Or App 290, 294, 292 P3d 660 (2012). "The test for voluntariness is whether, under the totality of the circumstances, the consent was given by an act of a defendant's free will, as opposed to resulting from express or implied coercion." *Id.*

Defendant argues that his statement to Hill ("Go on ahead. She's inside.") was not an expression of consent but, rather, acquiescence to Hill's declaration that she was "*going to* go in and check on [the victim]." (Emphasis added.) According to defendant, Hill's statement communicated "in no uncertain terms" that a warrantless entry was inevitable, leaving defendant with no meaningful choice.

A defendant's "mere acquiescence" to police authority does not constitute voluntary consent. *State v. Berg*, 223 Or App 387, 392, 196 P3d 547 (2008), *adh'd to as modified on recons*, 228 Or App 754, 208 P3d 1006, *rev den*, 346 Or 361 (2009). "[A]cquiescence occurs when an individual is not given a reasonable opportunity to choose to consent or when he or she is informed that a search will occur regardless of whether consent is given." *Id.* In determining whether a particular interaction between police and a defendant amounts to consent, courts pay close attention to the words used by the officer requesting consent. *State v. Briggs*, 257 Or App 738, 742, 307 P3d 564, *rev den*, 354 Or 386 (2013). "When those words do not provide the listener with a reasonable opportunity to choose to consent, or when those words leave the listener with the impression that a search is inevitable, absent strong countervailing factors, we have consistently found acquiescence rather than consent." *Id.* at 742-43; *see, e.g., Jepson*, 254 Or App at 296 (the officer's statement that "'we're going to have to take the firearms,' *** was not a request to obtain consent, but rather, an unconditional statement, which did not invite a response other than acquiescence"); *Freund*, 102 Or App at 652 (officer's statement "that 'he was there' to pick up the marijuana and 'he wanted' to do it calmly" was unconditional and communicated to the defendant that she had "no choice whether a search would occur"); *cf. State v. Ry/Guinto*, 211 Or App 298, 306-07, 154 P3d 724, *rev den*, 343 Or 224 (2007) (officer's "dogged persistence" in trying to obtain consent to search a vehicle, despite the defendant's repeated statements that there were no weapons in the vehicle, did not render the defendant's consent to search involuntary where the officer's requests expressed both his desire to receive consent to search and his understanding that he could not search without consent); *Briggs*, 257 Or App at 743-44 (holding that the state met its burden of proving that consent was voluntary where, despite the officer's declaratory statement—"I need to talk to the person that just ran in"—the officer's words did not convey to the listener that she had no choice as to whether a search would occur). "There is, in ordinary social intercourse, a world of difference between saying 'I'd like to come in,' and 'I'm coming in.'" *Ry/Guinto*, 211 Or App at 306.

In this case, we agree with defendant that Hill's declaratory statement was not a request for consent to enter the house and invited no response other than acquiescence. Hill told defendant, unconditionally, that she was "going to go in" to check on the victim. Moreover, unlike certain declaratory statements which we have interpreted as requests for consent, *see Briggs*, 257 Or App at 743-44, Hill's statement conveyed neither a choice between allowing or denying entry, nor the idea that the officers would not—and could not—enter without defendant's consent.[3] Rather, defendant's only options were to agree to the warrantless entry or to challenge an officer's plainly articulated intent to enter the home. *See Freund*, 102 Or App at 652 ("[D]efendant was likely to conclude that the choice merely was between cooperating or not cooperating with a search that was bound to occur."). Under those circumstances, we conclude that the state failed to meet its burden of proving that defendant's response amounted to anything more than passive acquiescence to Hall's stated intent to enter the home.

In sum, we conclude that the trial court erred when it denied defendant's motion to suppress evidence obtained as a result of the warrantless entry into his home.[4] Furthermore, we reject the state's contention that the admission of that evidence—which included photographs of the broken bathroom door and the victim's injuries—was harmless. A trial court's evidentiary error is harmless only if we can say that there was there was "little likelihood" that the error affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). As defendant points out, the state referred to the wrongly admitted evidence in closing argument, remarking that the photographs and injuries were "consistent with [the victim's] description of events." The trial court found the victim to be more credible, explaining in its speaking verdict that the

---

[3] Although it is not part of our analysis as to whether Hill's statement could reasonably be interpreted as a request for consent, we note that, at the suppression hearing, when asked what she would have done if defendant had told her that she could not come in, Hill answered that she "still would have gone inside."

[4] The state does not dispute that, if the trial court erred in denying the motion to suppress, all of the evidence obtained as a result of the warrantless entry into defendant's home—including the photographs and the victim's statements to officers—was subject to suppression.

evidence, and specifically the victim's injuries (which were documented through photographs taken inside the home), was consistent with the victim's version of the events. Under the circumstances of this case, which was essentially a credibility contest between the victim and defendant, we cannot conclude that there was little likelihood that the erroneously admitted evidence had an effect on the court's verdict.[5]

Reversed and remanded.

---

[5] In light of our conclusion, we need not address defendant's second assignment of error.