Submitted June 11, 2021, affirmed November 16, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MICHAEL DEREK JOHNSON,
*Defendant-Appellant.*

Multnomah County Circuit Court
19CN02963; A172361

522 P3d 8

Defendant appeals from a judgment finding him in contempt of court for violating a restraining order by possessing a firearm. Defendant challenges the trial court's denial of his motion to suppress evidence of the firearm, arguing that it was discovered through an unconstitutional seizure. Defendant approached an officer for assistance with a theft. Upon learning defendant's concealed carry permit had been stolen, the officer asked if defendant was carrying a concealed firearm. Defendant admitted he was carrying a firearm and agreed to the officer taking temporary possession of the firearm. The officer had defendant place his hands on his head while the officer retrieved the firearm from defendant's pocket. The officer subsequently secured the firearm in his patrol vehicle. Defendant argues the circumstances amounted to an unconstitutional seizure. *Held*: The Court of Appeals rejected defendant's argument, concluding he was not seized under Article I, section 9.

Affirmed.

Susan M. Svetkey, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Brett J. Allin, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Adam Holbrook, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

Defendant appeals from a judgment finding him in contempt of court for violating a restraining order by possessing a firearm. Defendant challenges the trial court's denial of his motion to suppress evidence of the firearm, arguing that it was discovered through an unconstitutional seizure. He asserts that he was illegally seized when, after contacting an officer for assistance with a theft, the officer asked him if he was carrying a concealed firearm, had him place his hands on his head while the officer retrieved the firearm from his pocket, and locked the firearm in the officer's vehicle. We conclude that the totality of the circumstances indicate that defendant was not seized, and therefore the trial court correctly denied the motion to suppress. We affirm.

We review a trial court's denial of a motion to suppress for errors of law. *State v. Maciel-Figueroa*, 361 Or 163, 165, 389 P3d 1121 (2017). In so doing, we are bound by the court's explicit factual findings if there is constitutionally sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). The following facts are taken from the officers' testimony at the suppression hearing, which the trial court found to be credible and adopted as its findings of fact.

On an afternoon in July, Officer Matthew Jacobsen with the Portland Police Bureau was pursuing a suspect through the Old Town neighborhood of Portland. He had just taken a suspect into custody when defendant flagged him down. Jacobsen told defendant he would be with him shortly, if he wanted to "hang out" while Jacobsen finished what he was doing on the other matter. Jacobsen then returned to defendant, who reported that someone had stolen several items from him, including his ID, phone, and concealed handgun license. Defendant told Jacobsen he had tracked his phone to the area and believed the thief to be in a social services building nearby. Upon learning that defendant's concealed handgun license had been stolen, Jacobsen asked defendant if he had his gun on him, knowing that people who have concealed handgun licenses commonly carry firearms. Defendant responded that his firearm was in his

pocket. Jacobsen asked if he could hold on to the gun temporarily while he finished up what he was doing with the previous suspect and then would come back and figure out what was going on with defendant's matter. Defendant responded, "no problem," and allowed Jacobsen to retrieve the handgun from his pocket. Jacobsen had defendant put his hands on his head while Jacobsen removed the gun from defendant's pocket, in a fashion that Jacobson characterized as "really cooperative, really low key." Jacobsen secured the firearm in his patrol vehicle and returned to his original matter, telling defendant that other officers were on the way, and they would all go from there. Two other officers arrived shortly and took over dealing with defendant's situation. Upon running a check on defendant to confirm that they could return the firearm to him, the other officers discovered he was the subject of a restraining order that prevented him from possessing firearms.

Defendant filed a motion to suppress evidence of the firearm.[1] He argued that Jacobsen escalated what began as a mere encounter into a "stop" without reasonable suspicion that defendant was engaged in criminal activity, and thus all evidence discovered after the illegal stop should be suppressed. The state argued that defendant was not stopped and that he had voluntarily consented to the officer removing and securing the firearm while defendant waited for assistance with his theft complaint. The trial court denied the motion to suppress, concluding that the situation was a mere encounter that had not elevated to a stop by the time Jacobsen secured the handgun in his vehicle. Following the ruling on the motion to suppress, defendant consented to a stipulated facts trial and was found in contempt of the restraining order and sentenced to 18 months of probation. This appeal followed.

Defendant now reiterates his argument that he was illegally stopped, asserting that Jacobsen's questioning as to whether he was carrying a weapon elevated the conversation to a stop. Alternatively, he argues that the encounter became a stop when Jacobsen told defendant

---

[1] Defendant also challenged the admissibility of statements he made, but he has not reasserted that challenge on appeal.

to place his hands on his head while the officer retrieved the gun from his pocket, or at the latest when defendant's property was locked inside of the officer's vehicle, rendering defendant unable to end the encounter without abandoning his property. The state maintains that the trial court correctly found defendant was not stopped, given the totality of the circumstances. Even if he was stopped, the state argues, the consent and officer safety exceptions to the warrant requirement rendered the stop constitutionally justified.

The question before us is whether Jacobsen seized defendant within the meaning of Article I, section 9, of the Oregon Constitution.[2] If, as the trial court concluded, defendant was not seized, that ends the inquiry in this case. On the other hand, if defendant was seized, we must determine whether the seizure was lawful based on officer safety or defendant's consent.

Under Article I, section 9, only some police-civilian encounters implicate constitutional protections against unreasonable "seizures." *State v. Backstrand*, 354 Or 392, 398-99, 313 P3d 1084 (2013). "At one end of the continuum are mere encounters for which no justification is required," and at the other end are arrests, "which involve protracted custodial restraint and require probable cause." *Id.* at 399 (internal quotation marks and citations omitted). In between are "temporary detentions for investigatory purposes," or "stops," which require "reasonable suspicion." *Id.* Unlike mere encounters, stops and arrests implicate Article I, section 9, protections. *Id.*

An encounter rises to a seizure when (1) a law enforcement officer intentionally and significantly interferes with an individual's liberty or freedom of movement; or (2) a reasonable person, under the totality of the circumstances, would believe that his or her liberty or freedom of movement has been significantly restricted. *State v. Ashbaugh*, 349 Or 297, 316, 244 P3d 360 (2010).

---

[2] Article I, section 9, states: "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

For an encounter to constitute a seizure, "something more than just asking a question, requesting information, or seeking an individual's cooperation is required[.]" *Backstrand*, 354 Or at 403. However, a verbal encounter can rise to the level of a seizure "when the content of the questions, the manner of asking them, or other actions that police take (along with the circumstances in which they take them) would convey to a reasonable person that the police are exercising their authority to coercively detain the citizen[.]" *Id.* at 412. Ultimately, "something more" can be the content or manner of questioning or the accompanying physical acts by the officer, if those added factors would reasonably be construed as a show of authority requiring compliance with the officer's request. *Id.* at 403.

In evaluating the circumstances before us, we begin with the fact that defendant initiated the contact. The vast majority of our search and seizure cases begin with police officers initiating contact with an individual, based on requests for information, observed violations or criminal activity, or some other investigatory circumstances. The fact that defendant sought out Jacobsen's attention and assistance and waited around while Jacobsen tended to the other investigation he was involved with contributes to the voluntary nature of the encounter. Jacobsen would clearly need no justification for responding to a citizen's request for police assistance.

With respect to Jacobsen asking defendant whether he had his gun on him, we find that that inquiry did not result in a stop. Without some further show of authority, the content of the question did not cause defendant to be seized. *See State v. Soto*, 252 Or App 50, 58-59, 284 P3d 1254, *rev den*, 353 Or 127 (2012) ("As to the question about the weapon, the content of the question, asked in a conversational tone and unaccompanied by some outward show of authority, plainly did not effectuate a seizure."); *State v. Jones*, 241 Or App 597, 604, 250 P3d 452, *rev den*, 351 Or 318 (2011) (concluding that the content of the officer's questions about drugs and weapons, without any show of authority, did not cause the defendant to be seized). Jacobsen's recounting of the conversation indicated that this was a standard follow-up question, posed conversationally.

We next consider Jacobsen's actions in retrieving the gun from defendant's pocket. Defendant cites *State v. Courtney*, 242 Or App 321, 255 P3d 577, *rev den*, 351 Or 401 (2011), in support of his argument that Jacobsen's direction to defendant to place his hands on his head resulted in defendant being seized. In *Courtney*, this court found that the defendant was seized when the officer directed him to exit a vehicle with his hands on his head with his fingers interlaced. 242 Or App at 332-33. However, the court also considered other circumstances in reaching that conclusion, including that the officer had initially directed the defendant to stay in the car; multiple officers were present, contributing to the show of authority; and it was not clear that the officer had communicated to the defendant why he was being asked to get out of the car. *Id.*

In *State v. Najar*, 287 Or App 98, 101, 401 P3d 1205 (2017), an officer instructed an individual to reach for his wallet with one hand while keeping his hands where the officer could see them. We held that that direction was a show of authority that amounted to a seizure in the totality of the other circumstances, including officers approaching the vehicle from both sides, shining lights in the vehicle, knocking on the window, and asking the defendant to produce identification. *Najar*, 287 Or App at 106-07.

Contrary to *Courtney* and *Najar*, Jacobsen was the only officer interacting with defendant, who was not the subject of investigation or suspicion and who had sought out Jacobsen's assistance, and defendant was cooperative and agreed to Jacobsen's request to hold on to the gun temporarily and allowed the retrieval. Though an officer's instruction to an individual about how to position their body, including their hands, can be a factor in finding the individual to have been seized, we conclude that the totality of the circumstances present here falls short of effectuating a constitutionally significant seizure. Jacobsen's communication to defendant about how to stand in order to execute a safe weapon transfer, without some additional show of authority, did not result in defendant being seized given the circumstances.

Finally, defendant argues that he was seized when Jacobsen secured the firearm in his vehicle, effectively

preventing defendant from departing without his valuable property. However, the record reflects that defendant consented to Jacobsen's request to temporarily take control of the firearm while he wrapped up the other matter. We do not find that the circumstances presented here constitute "mere acquiescence" to an officer's authority. *See State v. Stanley*, 287 Or App 399, 407, 404 P3d 1100 (2017) (recounting multiple fact scenarios examining whether an officer's statements are declaratory or a request). Jacobsen "asked" defendant if he could hold on to the weapon and testified that he "told him that [he] wanted to hold onto it temporarily," but the record contains no indication that Jacobsen insisted on confiscating the firearm or implied that it was inevitable. Because defendant consented to Jacobsen taking temporary control of his property, the seizure of the firearm did not result in a seizure of defendant.

Because we conclude that defendant was not seized, we do not address whether any exceptions apply to justify a warrantless seizure.

Affirmed.